NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12400


COMMONWEALTH  vs.  JOSEPH DIRICO.



Middlesex.    April 2, 2018. - September 13, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher,
              & Kafker, JJ.



Constitutional Law, Speedy trial.  Practice, Criminal, Speedy
     trial, Discovery.




Indictments found and returned in the Superior Court
Department on September 15, 2005.

A motion to dismiss was heard by John T. Lu, J.; the cases
were tried before Elizabeth M. Fahey, J.; a motion for
reconsideration of the motion to dismiss was heard by Fahey, J.;
and a supplemental motion to reconsider the motion to dismiss,
filed on October 28, 2015, was considered by Lu, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Rebecca Rose for the defendant.
Jamie M. Charles, Assistant District Attorney, for the
Commonwealth.


GANTS, C.J.  The defendant, Joseph Dirico, claims a

violation of his rights to a speedy trial under Mass. R. Crim.

36 (b), as amended, 422 Mass. 1503 (1996) (rule 36 [b]); the Sixth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment; and art. 11 of the Massachusetts Declaration of Rights. The defendant contends that the Commonwealth was responsible for the delay in providing him with the results of deoxyribonucleic acid (DNA) evidence testing, and that none of the time after he filed a motion for mandatory discovery should be considered excludable delay. We hold that the defendant's right to a speedy trial under rule 36 (b) was not violated.

We conclude that the discovery the defendant characterized as "mandatory" was not mandatory discovery that the Commonwealth must automatically provide to a defendant under Mass. R. Crim. P. 14 (a) (1), as amended, 444 Mass. 1501 (2005) (rule 14 [a] [1]). We also conclude that, even if it did constitute mandatory discovery, a defendant who does not want the speedy trial clock to be tolled where a scheduled event is continued because of the Commonwealth's delay in providing mandatory discovery must, under rule 14 (a) (1) (C), move to compel the production of that discovery or move for sanctions, which the defendant failed to do here. Here, the defendant acquiesced in, benefited from, and was partially responsible for the vast majority of the delay between the filing of his motion for mandatory discovery and the filing of his motion to dismiss for

lack of a speedy trial:  the defendant retained an expert to evaluate the results of the Commonwealth's DNA testing, the defendant did not object to the Commonwealth's delay in providing the additional information regarding that testing ordered by the judge to be produced, and a trial date could not reasonably be assigned until the expert had obtained and evaluated that additional information.

Finally, we conclude that a criminal defendant who moves for dismissal for lack of a speedy trial, claiming violation of his or her rights to a speedy trial under rule 36 and the United States and Massachusetts Constitutions, is entitled to review of such constitutional claims even where his or her rule 36 claim is denied.  A constitutional analysis of a speedy trial claim is separate and distinct from a rule 36 analysis, and is triggered when a defendant alleges "that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." Commonwealth v. Butler, 464 Mass. 706, 709-710 (2013), citing Doggett v. United States, 505 U.S. 647, 651-652 (1992).  Having conducted that constitutional analysis, we hold that the defendant's constitutional rights to a speedy trial were not violated.

Background.  On September 15, 2005, a Middlesex County grand jury returned indictments charging the defendant with three counts of statutory rape of his fifteen year old daughter

(victim), in violation of G. L. c. 265, § 23. The defendant was arraigned on October 20, 2005, in the Superior Court, and pleaded not guilty to all three counts.

During the course of its investigation, the police learned from the defendant's wife that the victim disclosed to her that the defendant had had sexual intercourse with the victim on the couch in the basement of the family home. A police officer accompanied the defendant's wife into the home and seized the cushion cover of the couch as evidence. Later, using a fluorescent light, the police located approximately seven spots on the cushion cover and observed signs of semen. On May 16, 2005, the cushion cover was brought to the State police crime laboratory (crime lab) for examination of possible DNA evidence.

On July 11, 2006, the defendant's wife notified the police that the victim had found a framed photograph of the victim on which, according to the victim, the defendant had ejaculated numerous times during masturbation and then handed to the victim. A police inspector examined the framed photograph with a fluorescent light and an orange filter, and observed signs of bodily fluids on the frame. This item was submitted to the crime lab on July 21, 2006, for DNA testing.

On September 7, 2006, a judge ordered the defendant to provide his saliva on a buccal swab. On December 13, 2006, the record indicates that the prosecutor provided the defendant with

a "DNA Affidavit" from a crime lab case manager of forensic biology, which was dated January 9, 2006.  The record does not reflect the content of this affidavit, but one can infer that it did not include a DNA examination of the framed photograph and that it did not compare the defendant's DNA to any DNA that might have been located on the cushion cover.

On May 23, 2007, the Commonwealth provided additional DNA discovery to the defendant,[1] and defense counsel informed the prosecutor that the defendant would be retaining an expert to review the DNA findings.  On June 22, 2007, the defendant filed a motion for funds for a DNA expert and a motion for "mandatory discovery."  The latter motion sought an order that the Commonwealth provide copies of "all [electronic data] regarding the DNA testing," "all electronic files related to the case, reported or not," and the "Standard Operating Manual" used by the laboratory analysts who conducted the DNA testing.  The judge allowed both motions on that same day.  But he did not issue an order to Orchid Cellmark, the private laboratory that the Commonwealth had used to conduct the DNA testing, directing the production of the records, until September 4, 2007.[2]  On

---

[1] The record does not reflect the content of that deoxyribonucleic acid discovery.

[2] The precise date on which the Commonwealth submitted evidence samples to Orchid Cellmark for analysis is unclear from the record.

September 10, 2007, the Commonwealth provided the defendant with the supplemental discovery that the defendant had requested.

On August 6, 2007, a status review was held, and the case was continued until September 4, 2007, to give defense counsel more time to provide the Commonwealth with the name and curriculum vitae of its defense expert. A status review was held on September 4, 2007, but the case was continued at the suggestion of the court (without any objection by the defendant) until October 11, 2007. At that October 11 status conference, the defendant had yet to provide the Commonwealth with the required reciprocal discovery regarding his defense expert; this was provided to the Commonwealth on October 23, 2007.

Late in December, 2007, the defendant sent a report to the Commonwealth that "included a notation about missing discovery material." The Commonwealth represents that it promptly telephoned defense counsel and initiated written communications in an effort to clarify what discovery was missing. Nevertheless, it took until January 30, 2008, for the Commonwealth to receive clarification that the defendant did not have the results of the Y-chromosome short tandem repeat method (Y-STR) testing, which is male-specific DNA testing. On March 6, 2008, shortly after receiving the Y-STR results from Orchid Cellmark, the Commonwealth provided the defendant with them.

With this production, the defendant had the results of all of the DNA testing in the case.

The DNA analysis of the couch cushion and framed photograph found DNA only in epithelial cells commonly found on the surface of human skin. The results of the Y-STR testing demonstrated that the defendant "could not be excluded as the donor of any of the DNA profiles obtained from any of the epithelial [cell] fractions of the cushion cuttings." The results of the Y-STR testing demonstrated that the defendant's DNA "matched" the DNA profile from an epithelial fraction of the framed photograph. One of the cushion cover samples yielded "a possible [DNA] mixture, indicating the possible presence of an unidentified individual." No DNA from semen was reported to be found on either item that was tested.

On May 20, 2008, the defendant filed a motion to dismiss for lack of a speedy trial, claiming that the delay in bringing his case to trial violated rule 36 (b), the Sixth Amendment, and art. 11. The judge calculated what he found to be the excludable delay, reached a "preliminary" finding of fact that no more than 258 days attributable to the Commonwealth had elapsed between the date of arraignment and the date of the filing of the motion to dismiss, and accordingly denied the defendant's motion without prejudice.

The defendant's first trial began on September 30, 2008, and, as a result of a hung jury, ended in a mistrial on October 8, 2008.  On February 17, 2009, the defendant's second trial commenced before a different judge, and the jury found the defendant guilty on all three counts of statutory rape.  The Appeals Court affirmed his convictions in an unpublished memorandum and order pursuant to its rule 1:28.  See Commonwealth v. Dirico, 79 Mass. App. Ct. 1130 (2011).

On November 26, 2012, the defendant, representing himself, moved for reconsideration of the denial of his motion to dismiss for lack of a speedy trial, and the judge who had presided over his second trial denied the motion, concluding that the defendant had waived this claim by not seeking reconsideration before appeal and by not raising it on appeal.  The defendant appealed, and the appeal was stayed by the Appeals Court to allow him, after the appointment of counsel, to renew his motion to dismiss for lack of a speedy trial.

On October 28, 2015, the defendant, now represented by counsel, filed a supplemental motion to reconsider the denial of the motion to dismiss, arguing that his rights to a speedy trial under rule 36 (b), the United States Constitution, and the Massachusetts Declaration of Rights had been violated by the denial of his motion to dismiss before his first trial.  The judge who had originally denied that motion issued new findings

of fact and denied the motion to reconsider, this time finding that, after considering the excludable delay, only ninety-seven days that were attributable to the Commonwealth had elapsed between the date of arraignment and the date of the filing of the motion to dismiss.  The judge noted that, on June 22, 2007, another judge had allowed the defendant's "Motion for Mandatory Discovery," where the defendant moved for discovery of various data, files, and documents relating to DNA testing, but that these items of discovery were not produced in full to the defendant until March 6, 2008.  The judge declined to count any portion of this DNA discovery delay as elapsed time attributable to the Commonwealth because the defendant had not filed a motion to compel this discovery or a motion for sanctions pursuant to rule 14.

The defendant appealed, and the Appeals Court affirmed the denial of the defendant's motion for reconsideration in an unpublished memorandum and order pursuant to its rule 1:28.  See Commonwealth v. Dirico, 91 Mass. App. Ct. 1116 (2017).  We granted the defendant's application for further appellate review.

Discussion.  In reviewing a defendant's speedy trial claim on appeal, we accept the judge's findings of fact absent clear error where the judge's findings rest on his or her evaluation of the credibility of a witness testifying at an evidentiary

hearing, or where the judge's findings rest on his or her memory of events from presiding over the proceedings.  See Barry v. Commonwealth, 390 Mass. 285, 289 (1983).  We then "make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).  But "[w]e are in as good a position as the judge below to decide whether the time limits imposed by the rule have run" where the judge's findings, as here, rest solely on the docket, the clerk's minutes, and additional evidence in the record.  See Commonwealth v. Denehy, 466 Mass. 723, 730 (2014), quoting Barry, supra.  See Commonwealth v. Roman, 470 Mass. 85, 93 (2014) ("For purposes of a rule 36 calculation . . . , the docket and the clerk's log are prima facie evidence of the facts recorded therein").[3]

1.  Rule 36.  Rule 36 is a "[case] management tool, designed to assist the trial courts in administering their dockets."  Barry, 390 Mass. at 295-296, quoting Reporters' Notes to Mass. R. Crim. P. 36, Mass. Ann. Laws, Rules of Criminal Procedure, at 525 (1979).  It also "creates a means through

---

[3] In Commonwealth v. Taylor, 469 Mass. 516, 524 (2014), we declared, "On appeal, we consider whether the judge abused his discretion in assessing the defendant's speedy trial claims." We no longer believe this to be the correct standard of review.

which [criminal] defendants who desire a speedy trial can secure one."  Id. at 296.  Under rule 36, "a criminal defendant who is not brought to trial within one year of the date of arraignment is presumptively entitled to dismissal of the charges unless the Commonwealth justifies the delay."  Commonwealth v. Spaulding, 411 Mass. 503, 504 (1992).[4]  See Mass. R. Crim. P. 36 (b) (1) (C), (D).  Dismissal under rule 36 is with prejudice. Commonwealth v. Lauria, 411 Mass. 63, 71 (1991).

Here, the defendant has established a prima facie violation of rule 36, because 943 days elapsed between his arraignment on October 20, 2005, and the filing of his motion to dismiss for lack of a speedy trial on May 20, 2008.  The burden therefore shifts to the Commonwealth to justify the delay.  See Spaulding, 411 Mass. at 504.  Subtracting twelve months (i.e., 365 days) from this period leaves 578 days that the Commonwealth has the burden to show were excludable.[5]

---

[4] Rule 36 provides that "a defendant shall be tried within twelve months after the return day in the court in which the case is awaiting trial."  Mass. R. Crim. P. 36 (b) (1) (C), as amended 422 Mass. 1503 (1996).  The return day is "the day upon which a defendant is ordered by summons to first appear or, if under arrest, does first appear before a court to answer to the charges against him, whichever is earlier."  Mass. R. Crim. P. 2 (b) (15), as amended, 397 Mass. 1226 (1986).  Here, where the defendant was under arrest, the return day is the date of arraignment, October 20, 2005.  See id.

[5] In making our calculations, we adhere to rule 36 (b) (3), which provides:  "In computing any time limit other than an excluded period, the day of the act or event which causes a

The defendant contends that the Commonwealth cannot meet this burden because the 333 days that elapsed between the filing of his motion for mandatory discovery on June 22, 2007, and the filing of his motion to dismiss on May 20, 2008, should not be deemed excludable delay in that this delay resulted from the Commonwealth's failure to timely provide the defendant with mandatory DNA discovery.[6]

There are two separate ways in which the Commonwealth can meet its burden of justifying a delay, thereby excluding it from the speedy trial calculation under rule 36.  The first way is to show that the delay falls within one of the "excluded periods" specifically enumerated under rule 36 (b) (2).  Such periods include, for example, "delay[s] resulting from hearings on pretrial motions" and "delay[s] . . . during which any proceeding concerning the defendant is actually under

_____

designated period of time to begin to run shall not be included. Computation of an excluded period shall include both the first and the last day of the excludable act or event."  However, "[i]f there are excludable periods of delay which overlap, a day is excluded only once."  Barry v. Commonwealth, 390 Mass. 285, 292 (1983).

[6] The Appeals Court noted that, "[a]t oral argument, defense counsel agreed that our resolution of the [333 days between the filing of the defendant's motion for mandatory discovery and the filing of his motion to dismiss] is outcome-determinative.  The defendant's rule 36 speedy trial claim rises or falls on the attribution of the [333-day delay] to the Commonwealth."  See Commonwealth v. Dirico, 91 Mass. App. Ct. 1116 (2017).  Although the defendant no longer makes this concession on appeal, we may take note of his earlier statements before the Appeals Court.

advisement." Mass. R. Crim. P. 36 (b) (2) (A) (v), (vii).  Also excludable is "[a]ny period of delay resulting from a continuance granted by a judge . . . , if the judge granted the continuance on the basis of his findings that the ends of justice served by taking such action outweighed the best interests of the public and the defendant in a speedy trial." Mass. R. Crim. P. 36 (b) (2) (F).[7]

The second way that the Commonwealth can justify a delay is provided not by any provision in rule 36, but by the common law. Under the common law, a defendant is not entitled to dismissal if he or she acquiesced in, was responsible for, or benefited from the delay.  See Barry, 390 Mass. at 295.  A defendant is held to have acquiesced in a delay if he or she "agreed to a

---

[7] The judge may exclude a period of delay under rule 36 (b) (2) (F) only if "the judge sets forth in the record of the case, either orally or in writing, his reasons for finding that the ends of justice served by the granting of the continuance outweigh the best interests of the public and the defendant in a speedy trial."  Mass. R. Crim. P. 36 (b) (2) (F). See Commonwealth v. Davis, 91 Mass. App. Ct. 631, 637 n.11 (2017) (rule 36 [b] [2] [F] finding "need not be explicit, but may be implied from the record").  As a reviewing court, we are not in a position to characterize a continuance as an "ends of justice" exception under rule 36 (b) (2) (F) where the motion judge did not explicitly or implicitly make the requisite finding.  See Reporter's Notes to Mass. R. Crim. P. 36 (b) (2) (F), Massachusetts Rules of Court, Rules of Criminal Procedure, at 212 (Thomson Reuters 2018) ("It is implicit that [b][2][F] does not countenance an after-the-fact appraisal of the causes of delay by a reviewing court; in order to be excluded, the delay must have been the subject of a formal continuance.  This does not, of course, preclude the appellate court from considering whether the grant or denial of a continuance constituted an abuse of discretion").

continuance . . . or has not entered an objection to delay."
Id. at 298.  Thus, in several cases, we have excluded time under rule 36 based on the defendant's failure to object to a delay.
See, e.g., Roman, 470 Mass. at 93 (time excluded where defendant failed to object to continuance); Denehy, 466 Mass. at 731-732 (same); Lauria, 411 Mass. at 68-69 (same); Commonwealth v. Farris, 390 Mass. 300, 305 (1983) (same).  In doing so, we have emphasized that rule 36 imposes obligations on all parties, and that it is the obligation of criminal defendants to "press their case through the criminal justice system."  Lauria, supra at 68, quoting Barry, supra at 297.  We have required defendants to object to delays in order to preserve their rights under rule 36 because we recognize that otherwise, "the public interest . . . [may] be thwarted by those defense counsel who decide that delay is the best defense tactic."  Barry, supra.[8]

Delay arising from forensic testing at a laboratory, such as the analysis of DNA found at a crime scene, is not an enumerated category of delay under rule 36 (b) (2).
Accordingly, there is no automatic excludable delay for the time

---

[8] The determination whether a defendant acquiesced in, was responsible for, or benefited from a delay is often retrospective, and accordingly requires "a thorough examination of the record."  Reporter's Notes to Mass. R. Crim. P. 36 (b) (2), supra at 210.  We note that in order to avoid these difficult retrospective determinations on an often slim record, judges should, where possible, make contemporaneous findings whether time should be excluded under rule 36 (b) (2) (F).

period between when a sample is sent to a laboratory for analysis and when a laboratory report is completed. Cf. Barry, 390 Mass. at 292 ("once [the Commonwealth] establishes that an act or event triggers an excludable period of time [under rule 36 (b) (2)], the exclusion of the period is automatic"). But excludable delay may arise from forensic testing where a scheduled court event is continued because the forensic testing has yet to be completed and the scheduled event cannot reasonably be held until the parties obtain the testing results. For instance, where a final pretrial conference needs to be continued because the parties have yet to receive a forensic report from the laboratory, the period of delay arising from the continuance can be excluded pursuant to rule 36 (b) (2) (F) if the judge finds that "the ends of justice served by the granting of the continuance outweigh the best interests of the public and the defendant in a speedy trial." Where a judge grants a continuance to allow more time for forensic testing without making a rule 36 (b) (2) (F) finding, the delay arising from the continuance may also be excludable if the defendant acquiesced in the delay by agreeing to, or failing to object to, a continuance, if the defendant was responsible for the delay (by asking for the forensic testing, or otherwise being the reason for the continuance), or if the delay has benefited the defendant. See Commonwealth v. Rodgers, 448 Mass. 538, 542-543

(2007) (delay of 239 days resulting from continuances caused by delay in completion of Commonwealth's forensic DNA testing was excluded under speedy trial rule, where Commonwealth presented evidence that, "at each of the Commonwealth's requested postponements of status conferences on the subject, the defendant agreed to postponements to specific future dates," and there was "no evidence to suggest that the Commonwealth misled the defense as to the progress [or lack thereof] in testing, and the defendant was always free to insist that a scheduled status conference go forward so that the delay in testing could be explained to the judge" [footnote omitted]).

The results of the DNA samples submitted for forensic testing in this case had the potential to be significant to both the prosecution and the defense.  If DNA from the defendant's semen were identified on the cushion cover or on the framed photograph, it would have provided powerful corroboration of the victim's account of the sexual assaults.  If DNA from the defendant's semen were not identified on either item, its absence might have undercut the victim's credibility.

The parties were scheduled to be assigned a trial date on May 23, 2007, but a trial date could not be set because, on that date, the prosecutor provided defense counsel with additional DNA discovery and defense counsel informed the prosecutor that the defendant intended to retain an expert to review the DNA

findings.  The discovery motion the defendant filed on June 22, 2007 -- seeking the production of electronic data and files regarding the DNA testing, and the laboratory's standard operating manual -- appears to have been intended to assist the defendant's DNA expert in his review, because the defendant moved that same day for funds to retain such an expert.  The defendant did not provide the prosecutor with the name and curriculum vitae of the defense expert until October 23, 2007, and the defense expert apparently was still engaged in the forensic review in late December, 2007, when defense counsel notified the prosecutor that discovery was missing, without specifying precisely what discovery was missing.  A final pretrial conference scheduled for January 14, 2008, was not held, and the jury trial scheduled for January 28, 2008, was postponed; the docket does not reflect whether a new trial date was scheduled at that time.  Clarification that the results of Y-STR testing were missing from the discovery furnished to defense counsel did not occur until January 30, 2008, and these additional results were provided to the defendant on March 6, 2008, which was the date of a scheduled pretrial conference.  A final pretrial conference was held on May 8, 2008, and trial was scheduled for June 9, 2008, but this trial date was continued after the defendant moved on May 20, 2008, to dismiss for lack of a speedy trial.

The time period between May 23, 2007, when the hearing was held for assignment of a trial date, and May 8, 2008, when a trial date appears to have been finally assigned at the final pretrial conference, is an excludable delay of 352 days because the defendant simultaneously acquiesced in, benefited from, and was partially responsible for the delay. A trial date could not reasonably be assigned until the defendant's expert had completed his review of the results of the forensic testing. With these 352 days of excludable delay added to the 349 days preceding May 23, 2007, which are also excludable, and one day of overlap subtracted, see the table set forth in the Appendix, the Commonwealth has met its burden by demonstrating a total of 700 days of excludable delay (well beyond the 578 days of excludable delay it needed to avoid running afoul of rule 36).

The defendant challenges the conclusion that the Commonwealth has met its burden here by contending that he sought mandatory discovery on June 22, 2007, and that, as articulated in Taylor, 469 Mass. at 527, "[a] defendant should not be required to choose between the right to mandatory discovery and the right to a speedy trial." The defendant is correct that, in Taylor, we recognized that where the Commonwealth had failed to furnish a defendant with mandatory discovery, it would be unfair to require the defendant to decide between forgoing that discovery or moving to compel that

discovery if the filing of the motion to compel would produce automatic excludable delay under rule 36 (b) (2) (A). See id. at 526-527. To protect a defendant from this dilemma, we declared that where a defendant, pursuant to rule 14 (a) (1) (C), moves to compel the production of mandatory discovery or seeks sanctions for its nondisclosure, the time it takes to resolve the motion "shall not be excluded automatically from the ultimate speedy trial calculation." Id. at 527-528. Instead, the judge is to assess whether "the ends of justice served" by excluding the time outweigh "the best interests of the public and the defendant in a speedy trial." Id. at 528, quoting Mass. R. Crim. P. 36 (b) (2) (F). We also declared that the same principle applies where a defendant agrees to a continuance only because the defendant has yet to be given mandatory discovery. See id. at 525.

But the defendant here cannot benefit from our holding in Taylor for three reasons. First, the discovery he sought on June 22, 2007, was not mandatory discovery. Mass. R. Crim. P. 14 (a) (1) identifies categories of "mandatory discovery" that the prosecutor must provide to a defendant as "automatic discovery," including "[a]ny facts of an exculpatory nature," and "[m]aterial and relevant . . . reports of . . . scientific tests or experiments." Mass. R. Crim. P. 14 (a) (1) (A) (iii), (vii). "Because rule 14 was intended to facilitate the

automatic production of mandatory discovery 'without the need for motions or argument,' . . . and because the Commonwealth's obligation to produce is ongoing, . . . the defendant need not request any mandatory discovery items." Taylor, 469 Mass. at 521, quoting Reporter's Notes (Revised, 2004) to Rule 14, Massachusetts Rules of Court, Rules of Criminal Procedure, at 179 (Thomson Reuters 2014). But the defendant here did not seek "reports of . . . scientific tests"; instead, he sought all of the electronic data used to prepare the reports, all of the electronic files related to the case (whether reported or not), and the laboratory's standard operating manual. The disclosure of these items of discovery might prove beneficial to an expert who is retained to analyze a DNA report and may properly be ordered to be disclosed, but the Commonwealth is not automatically required under rule 14 (a) (1) to disclose these items in the course of mandatory discovery unless they are exculpatory (which the defendant does not contend they are).

Second, even if the discovery that the defendant had requested constituted mandatory discovery, the defendant failed to move pursuant to rule 14 (a) (1) (C) to compel its production or to seek sanctions for its nondisclosure. "[A] defendant seeking both to preserve his speedy trial rights and to obtain items of missing mandatory discovery must file a motion for sanctions or to compel pursuant to rule 14 (a) (1) (C)."

Taylor, supra at 527-528. "[A] defendant may not 'sit by passively,' then later invoke rule 36." Id. at 527, quoting Commonwealth v. Bourdon, 71 Mass. App. Ct. 420, 426 (2008). Rather, a defendant must "take proactive steps to alert the court and the prosecution" that the Commonwealth has violated its mandatory discovery obligations. See Taylor, supra.[9]

Third, even if this were mandatory discovery, and even if we construed the defendant's motion dated June 22, 2007, as a rule 14 motion to compel, the judge allowed the motion on the same day it was filed. Therefore, were we to decline to automatically exclude the "time it takes to resolve the rule 14 (a) (1) (C) motion" under rule 36 (b) (2), see Taylor, supra at 528, the defendant would only gain one day under rule 36.

The report of the scientific test regarding the results of the Y-STR testing would fall within the rubric of mandatory discovery, but the defendant never moved to compel its production or to seek sanctions for its nondisclosure. Therefore, even if the defendant had agreed to continue the

---

[9] Because the defendant did not file a motion pursuant to Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004), we need not reach the issue whether the rule announced in Taylor should apply retroactively to the defendant. See Commonwealth v. Taylor, 469 Mass. 516, 528 n.17 (2014) ("We note, as did the judge hearing the rule 36 motion, that the defendant in this case never pressed any remedies pursuant to rule 14 in an effort to address the missing mandatory discovery. Even under the rule we announce today, therefore, the defendant's motion to dismiss on speedy trial grounds would not have been successful").

final pretrial conference solely because he had yet to receive this mandatory discovery, he failed to do what was necessary to "sound the rule 36 'crisis call' and fulfil his . . . obligations under the rule."  Taylor, supra at 526.

Where a defendant contends that he or she is being denied the right to a speedy trial because of excessive delays in the completion of forensic testing and the production of a scientific report, a defendant must move to compel the production of that scientific report or move for sanctions pursuant to rule 14 (a) (1) (C).  A defendant is also encouraged to bring a rule 14 (a) (1) (C) motion when he or she anticipates that undue delay in the completion of forensic testing will necessitate the continuance of a scheduled event, or when undue delay has caused a continuance and the defendant seeks to prevent the need for a further continuance.  Bringing this type of motion alerts the judge that the defendant is actively contesting the delay, rather than sitting by passively.  See Taylor, supra at 527-528.  Where the delay necessitates the continuance of a scheduled event, a judge faced with a rule 14 (a) (1) (C) motion must evaluate whether "the Commonwealth [can] demonstrate[] that its delayed production was not due to wilful noncompliance or a lack of due diligence," which may render it "appropriate for the speedy trial clock to be tolled," and for appropriate findings to be made by the judge that the

continuance serves the "ends of justice" as required under rule 36 (b) (2) (F). See Taylor, supra at 528. A judge might otherwise resolve a rule 14 (a) (1) (C) motion by ordering that the forensic testing, including the production of the scientific report, be expedited to avoid the need for a continuance or a further continuance. See id.

Here, because the 352 days between May 23, 2007, and May 8, 2008, gave the defendant time to prepare his DNA expert for trial, and because the defendant never filed a motion to compel discovery or for sanctions under rule 14 (a) (1) (C), the defendant simultaneously acquiesced in, benefited from, and was partially responsible for the delay. Consequently, we hold that the defendant's right to a speedy trial under rule 36 (b) was not violated.

2. Constitutional right to a speedy trial. The defendant also argues that his constitutional rights to a speedy trial under the Sixth Amendment and art. 11 have been violated by the pretrial delay. We note at the outset that rule 36 is "a rule of case management" and, accordingly, "is wholly separate from [a defendant's] constitutional right to a speedy trial." Lauria, 411 Mass. at 67. See Barry, 390 Mass. at 295-296 (rule 36 "creates a means through which [criminal] defendants who desire a speedy trial can secure one," but "the opportunity conferred by the rule is not a fundamental constitutional right,

or even a right created by statute").  Consequently, even where, as here, we conclude that there has been no violation of rule 36, a defendant who claims that his or her constitutional rights to a speedy trial have been violated is entitled to review of that claim.  See Commonwealth v. Lanigan, 419 Mass. 15, 17-24 (1994) (concluding that defendant's constitutional rights to speedy trial were not violated after rejecting defendant's rule 36 claim); Commonwealth v. Vasquez, 55 Mass. App. Ct. 523, 529-530 (2002) (same).  See also Commonwealth v. Levin, 390 Mass. 857, 858 n.2 (1984) (declining to analyze constitutional right separately "[b]ecause the parties agree that rule 36 provides protection at least as great as the constitutional rights to speedy trial").[10]

Both the Sixth Amendment, incorporated through the Fourteenth Amendment, and art. 11 guarantee criminal defendants

---

[10] We note that Mass. R. Crim. P. 36 (c) provides that even where a defendant is not entitled to dismissal under rule 36 (b) because fewer than twelve months of nonexcludable delay have elapsed since arraignment, a defendant is still entitled to dismissal, upon motion, "where the judge after an examination and consideration of all attendant circumstances determines that:  (1) the conduct of the prosecuting attorney in bringing the defendant to trial has been unreasonably lacking in diligence and (2) this conduct on the part of the prosecuting attorney has resulted in prejudice to the defendant."  Rule 36 (c) "is a statement of the fundamental constitutional guarantee" and "puts the constitutional standard into manageable operational terms."  See Reporter's Notes to Mass. R. Crim. P. 36 (c), supra at 213.  Although rule 36 (c) derives from the constitutional guarantee of a speedy trial, a defendant may seek dismissal under rule 36 (c) without making a separate constitutional speedy trial claim.

the right to a speedy trial.  We interpret art. 11 through the lens of Sixth Amendment analysis.  See Commonwealth v. Butler, 464 Mass. 706, 709 n.5 (2013) ("Although we ultimately decide this case pursuant to art. 11 . . . , we cite Federal cases that interpret the Sixth Amendment . . . because the analysis is analogous").  The burden is on the defendant to demonstrate prejudicial delay sufficient to warrant dismissal of the indictments against him.  See Commonwealth v. Gilbert, 366 Mass. 18, 22 (1974).

Although a defendant who fails to prove a rule 36 (b) violation faces an uphill battle in proving a violation of his or her constitutional rights to a speedy trial, the analysis is somewhat different.  One difference is that the speedy trial clock for a constitutional analysis does not begin at the time of arraignment.  Under art. 11, it begins to run upon the issuance of a criminal complaint, see Butler, 464 Mass. at 712 ("a defendant's right to a speedy trial, at least under art. 11, attaches when a criminal complaint issues"), and under the Sixth Amendment, it begins to run at the time of indictment.  See Butler v. Mitchell, 815 F.3d 87, 89 (1st Cir. 2016), cert. denied sub nom. Butler v. Murphy, 137 S. Ct. 1064 (2017) ("Under the Sixth Amendment . . . , the speedy-trial right attached, and the count began, not when the complaint was issued, but when the . . . indictment was announced").  "[T]o trigger a speedy trial

analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." Butler, supra at 709-710, citing Doggett v. United States, 505 U.S. 647, 651-652 (1992). The burden of establishing "presumptively prejudicial delay" is relatively modest -- "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." Doggett, supra at 652 n.1. See Commonwealth v. Boyd, 367 Mass. 169, 179-180 (1975) (delay of fourteen months enough to "trigger some concern"). Here, the defendant's criminal complaint was issued on May 10, 2005, the indictment was announced on September 15, 2005, and he filed his motion to dismiss for lack of a speedy trial on May 20, 2008; this delay between 2005 and 2008 is more than sufficient to establish "presumptively prejudicial delay."[11]

---

[11] Because the defendant here is appealing from the denial of his motion to reconsider his earlier motion to dismiss for lack of a speedy trial, the speedy trial clock tolls at the time the defendant filed his motion to dismiss for lack of a speedy trial (just as it did for the rule 36 analysis). Had the defendant moved for a new trial following his convictions and claimed a constitutional violation of his right to a speedy trial, the speedy trial clock would have tolled on the date when his first trial commenced. See, e.g., Commonwealth v. Butler, 464 Mass. 706, 707, 714 (2013) (defendant appealed from order denying motion for new trial, and speedy trial clock tolled on first day of defendant's trial for purposes of constitutional speedy trial analysis).

Where a defendant has "established presumptive prejudice," we apply the four-factor test articulated in Barker v. Wingo, 407 U.S. 514, 530-531 (1972), to evaluate whether the defendant's constitutional right to a speedy trial has been violated. See Butler, 464 Mass. at 710, citing Doggett, 505 U.S. at 651-652. Under the Barker test, a reviewing court weighs the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to the defendant. See Barker, supra at 530.

Here, the length of the delay was substantial, but there is no evidence (and no claim by the defendant) that the Commonwealth was deliberately attempting to delay the trial for the purpose of hindering the defense. See Commonwealth v. Wallace, 472 Mass. 56, 61 (2015) ("Weighing most heavily against the government are deliberate attempts at delay"). Where, as earlier noted, the trial was delayed in part by the delay in obtaining all of the forensic testing results, the worst that can be said is that the Commonwealth was negligent in failing to more promptly obtain those results. "Although 'our toleration of . . . negligence varies inversely with its protractedness,' . . . negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense." Butler, 464 Mass. at 716, quoting Doggett, 505 U.S. at 657. Because there is no evidence here of "intentional delay or bad faith on the

part of the Commonwealth," the second prong of the Barker test weighs only lightly against the Commonwealth. See Butler, supra.

The defendant's assertion of his speedy trial rights were notably absent from the record, and a defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Wallace, 472 Mass. at 66, quoting Barker, 407 U.S. at 532. "If the defendant were truly concerned that the passage of time would undermine his ability to defend himself, common sense dictates that he would have pressed for a speedy trial." Gilbert, 366 Mass. at 23. Because the record reflects that the defendant was responsible for, benefited from, and acquiesced in the vast majority of the delay in bringing him to trial, the third prong of the Barker test weighs heavily against the defendant. See Butler, 464 Mass. at 717.[12]

Prejudice to the defendant "should be assessed in the light of the interests of defendants which the speedy trial right was

---

[12] We note that the constitutional analysis of this third prong of the test in Barker v. Wingo, 407 U.S. 514, 530-531 (1972), differs slightly from the rule 36 analysis. A defendant's acquiescence in delay will render the delay excludable under rule 36 (b) and, therefore, might prove fatal to a rule 36 speedy trial claim. But under a constitutional analysis, "the failure by the defendants to assert their speedy trial right is not a waiver of the right itself but simply a factor to be weighed," albeit an important factor. See Commonwealth v. Wallace, 472 Mass. 56, 68 (2015).

designed to protect," which include the interests "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532. "[A]lthough the defendant is not entirely absolved of responsibility to present some particularized prejudice at this stage of the analysis, he is entitled to some degree of presumptive prejudice that the Commonwealth can rebut with evidence that any delay left the defendant's 'ability to defend himself unimpaired.'" Butler, 464 Mass. at 717, quoting Doggett, 505 U.S. at 658 n.4.

Here, the defendant was released on pretrial probation at his arraignment on October 20, 2005, his bail was revoked on July 11, 2006, and he was placed in custody when he did not make bail. But he eventually made bail on July 19, 2006, and was released from custody. There is nothing in the docket to suggest that he was returned to custody before his first trial commenced on September 30, 2008. Where he spent only eight days in custody, the defendant did not suffer prejudice from oppressive pretrial incarceration. We recognize that, "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." Barker, 407 U.S. at 533. Although we do not minimize the hardships the

defendant suffered pending trial,[13] they do not rise to the level of prejudice that would justify a dismissal on constitutional speedy trial grounds. See, e.g., United States v. Carpenter, 781 F.3d 599, 615 (1st Cir.), cert. denied, 136 S. Ct. 196 (2015) (although defendant "argues convincingly that he has suffered great stress throughout the proceedings, he does not demonstrate why his anxiety was greater than that suffered by many other defendants, other than that it continued longer").

The potential impairment of a defense from delay is the "most serious" concern when evaluating whether the defendant was prejudiced, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Barker, 407 U.S. at 532. But nothing in the record before us suggests that the delay in bringing the defendant to trial precluded him from advancing his best defense or otherwise prejudiced his defense. See Commonwealth v. Beckett, 373 Mass. 329, 334 (1977) ("There was no claim that any witness was unavailable, nor any proof that any witness, potentially helpful to the defendant, had forgotten significant facts").

---

[13] The defendant claimed that the allegations against him and the delay in bringing him to trial "forced" him to move out of his home and to move to Arizona, led to his resignation from his job, contributed to his severe panic attacks and heart catheterization, and resulted in his receipt of "angry and taunting" messages from family and friends.

In conclusion, although the delay between the issuance of the defendant's criminal complaint (or, under the Sixth Amendment, the announcement of the indictment) and the filing of his motion to dismiss for lack of a speedy trial was certainly troubling in its length, the four <u>Barker</u> factors, "applied in their totality," do not establish that the defendant's constitutional right to a speedy trial was violated under either the Sixth Amendment or art. 11.  See <u>Butler</u>, 464 Mass. at 719. We therefore hold that the defendant's rights to a speedy trial under the United States and Massachusetts Constitutions were not violated.  See <u>Beckett</u>, 373 Mass. at 335 ("Considering the lack of prejudice to the defendant and her failure to assert her right to a speedy trial for over four years after her indictment, we conclude that, in spite of the inordinate delay, the defendant was not denied her constitutional rights in the circumstances").

<u>Conclusion</u>.  For the reasons stated, we affirm the denial of the defendant's motion to reconsider the denial of his motion to dismiss for lack of a speedy trial.

<u>So ordered</u>.

Appendix.

Under rule 36, the Commonwealth bears the burden of showing that, of the 943 days between the defendant's arraignment and the filing of his motion to dismiss, 578 days should be excluded. As explained above, the 352 days between May 23, 2007, and May 8, 2008, are excluded because the defendant simultaneously acquiesced in, benefited from, and was partially responsible for the delay. The following table looks to the time period prior to May 23, 2007, to determine whether the Commonwealth can justify the remaining 226 days. We conclude that the Commonwealth has satisfied its burden by demonstrating that 349 days of excludable delay preceded May 23, 2007, for a total of 700 days of excludable delay.[1]

| Events | No. days excluded | Explanation |
|---|---|---|
| October 20, 2005 (arraignment) -- January 9, 2006 (pretrial conference) | 0 | Included. Commonwealth does not contest this. |
| January 9, 2006 (pretrial conference) -- March 15, 2006 (scheduled | 0 | Included. Pretrial conference held as scheduled. Defendant did not acquiesce to delay by failing to object to motion |

---

[1] Adding up the days of excludable delay in the table results in a total of 362 days. But because a day is excluded only once where excludable periods of delay overlap, see Barry v. Commonwealth, 390 Mass. 285, 292 (1983), thirteen days of overlap must be subtracted from the 362, resulting in 349 days of excludable delay. One day of overlap must also be subtracted when adding the 349 days of excludable delay preceding May 23, 2007, to the 352 days of excludable delay following May 23, 2007. The result is a total of 700 days of excludable delay.

| Events | No. days excluded | Explanation |
|---|---|---|
| motion hearing) | | hearing that was scheduled at arraignment.  Commonwealth did not demonstrate that this period ought to be excluded. |
| March 15, 2006 (scheduled motion hearing) -- April 19, 2006 (scheduled status conference) | 0 | Included.  Motion hearing was "not reached by Court," and does not appear to have been rescheduled.  Defendant did not acquiesce to this delay by failing to object to next scheduled event, a status conference, which was scheduled at arraignment. Commonwealth did not demonstrate that this period ought to be excluded. |
| April 19, 2006 (scheduled status conference) -- May 9, 2006 (scheduled status conference) | 21 | Excluded.  Status conference continued at joint request of parties and rescheduled to May 9, 2006. |
| May 9, 2006 (scheduled status conference) -- June 6, 2006 (status conference) | 29 | Excluded.  Status conference continued at joint request of parties and rescheduled to June 6, 2006. |
| June 6, 2006 (status conference) -- June 13, 2006 (scheduled suppression hearing) | 0 | Included.  Status conference held as scheduled.  Defendant did not acquiesce to delay by failing to object to next scheduled event, a suppression hearing. |
| June 13, 2006 (scheduled suppression hearing) -- June 26, 2006 (scheduled status conference) | 0 | Included.  Suppression hearing not held because defendant filed no motions to suppress. Defendant did not acquiesce to delay by failing to object to next scheduled event, a status conference. |

| Events | No. days excluded | Explanation |
|---|---|---|
| June 26, 2006 (scheduled status conference) -- July 10, 2006 (scheduled status conference) | 0 | <u>Included</u>. Status conference not held for unknown reasons. Commonwealth does not claim this time to be excludable. |
| July 10, 2006 (scheduled status conference) -- August 8, 2006 (scheduled final pretrial conference) | 30 | <u>Excluded</u>. Status conference not held at the request of defendant. |
| August 8, 2006 (scheduled final pretrial conference) -- September 7, 2006 (hearing on "misc. matters") | 31 | <u>Excluded</u>. Final pretrial conference not held at request of defendant. |
| September 7, 2006 (hearing on "misc. matters") -- September 26, 2006 (scheduled trial date) | 0 | <u>Included</u>. Hearing held as scheduled. Defendant did not acquiesce to delay by failing to object to next scheduled event, the trial date, which was scheduled at arraignment. Commonwealth did not demonstrate that this period ought to be excluded. |
| September 26, 2006 (scheduled trial date) -- October 20, 2006 (scheduled discovery hearing) | 25 | <u>Excluded</u>. Trial date was postponed at request of both parties. |
| October 20, 2006 (scheduled discovery hearing) -- October 23, 2006 (discovery hearing) | 4 | <u>Excluded</u>. Discovery hearing continued at request of defendant and rescheduled to October 23, 2006. |

| Events | No. days excluded | Explanation |
|---|---|---|
| October 23, 2006 (discovery hearing) -- November 1, 2006 (pretrial conference) | 10 | <u>Excluded</u>. On October 23, 2006, parties executed new tracking order because defendant was appointed new counsel. This set forth November 1, 2006, as a scheduled pretrial conference date; December 7, 2006, as a date for hearing on nonevidentiary motions to dismiss; and May 8, 2007, as a proposed trial date. Defendant was partially responsible for, and benefited from, this delay. |
| November 1, 2006 (pretrial conference) -- November 22, 2006 (scheduled hearing on "misc. matters") | 22 | <u>Excluded</u>. On November 1, 2006, parties executed a second pretrial conference report, requiring that defendant's new counsel be provided with same discovery that had been provided to defendant's prior counsel by November 22, 2006. Defendant was partially responsible for, and benefited from, this delay. |
| November 22, 2006 (scheduled hearing on "misc. matters") -- December 7, 2006 (scheduled discovery hearing) | 16 | <u>Excluded</u>. Hearing not held at request of defendant. Defendant was partially responsible for, and benefited from, this delay because of appointment of new counsel. |
| December 7, 2006 (scheduled discovery hearing) -- January 25, 2007 (discovery hearing) | 50 | <u>Excluded</u>. Discovery hearing was not held, without objection from defendant, and discovery hearing was rescheduled for January 25, 2007. Defendant was partially responsible for, and benefited from, this delay. |

| Events | No. days excluded | Explanation |
|---|---|---|
| January 25, 2007 (discovery hearing) -- March 5, 2007 (status conference) | 40 | <u>Excluded</u>. Defendant was partially responsible for, and benefited from, this delay because of appointment of new counsel. |
| March 5, 2007 (status conference) -- March 6, 2007 (hearing on "misc. matters") | 2 | <u>Excluded</u>. Defendant was partially responsible for, and benefited from, this delay because of appointment of new counsel. |
| March 6, 2007 (hearing on "misc. matters") -- March 19, 2007 (scheduled suppression hearing) | 14 | <u>Excluded</u>. Defendant was partially responsible for, and benefited from, this delay because of appointment of new counsel. |
| March 19, 2007 (scheduled suppression hearing) -- April 17, 2007 (final pretrial conference) | 30 | <u>Excluded</u>. Defendant requested that a scheduled suppression hearing be continued until April 17, 2007; the record does not indicate whether this hearing was held thereafter. Defendant was partially responsible for, and benefited from, this delay. |
| April 17, 2007 (final pretrial conference) -- May 8, 2007 (scheduled trial date) | 22 | <u>Excluded</u>. Parties filed a joint motion to continue and convert then-scheduled trial date of May 8, 2007, into a status date because defendant wanted to afford his expert more time to review the DNA testing data. Defendant was partially responsible for, and benefited from, this delay. |
| May 8, 2007 (scheduled trial date) -- May 23, 2007 (hearing for trial assignment date) | 16 | <u>Excluded</u>. Parties jointly requested a continuance until May 23, 2007. |

TOTAL:  349 days of excludable delay (thirteen days of overlap subtracted from 362)