SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. JOHN LARACE

 
 Docket:
 SJC-13724
 
 
 Dates:
 April 11, 2025 - October 3, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Hampden
 

 
 Keywords:
 Constitutional Law, Speedy trial, Delay in commencement of prosecution. Practice, Criminal, Speedy trial, Delay in commencement of prosecution, Discovery, Continuance.
 
 

      Indictments found and returned in the Superior Court Department on April 29, 2019.
     The cases were heard by Mark D. Mason, J.
     The Supreme Judicial Court granted an application for direct appellate review.
     Emily A. Cardy, Committee for Public Counsel Services, for the defendant.
     Travis H. Lynch, Assistant District Attorney, for the Commonwealth.
     WOLOHOJIAN, J.  The defendant was brought to trial almost four years after he was arraigned on numerous felony charges.  In this direct appeal from his convictions, he argues that the lengthy delay ran afoul of the speedy trial standard contained in Mass. R. Crim. P. 36 (b), as amended, 422 Mass. 1503 (1996) (rule 36 [b]), and also violated his constitutional right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and by art. 11 of the Massachusetts Declaration of Rights.  
     A significant amount of the delay in this case is attributable to the various orders we issued in response to the COVID-19 pandemic and the public health crisis resulting from it.  Those orders explicitly excluded from rule 36 (b) calculations the period during which trials were suspended.  The orders did not, however, make mention of how the delay occasioned by those orders would be evaluated for purposes of a defendant's constitutional right to a speedy trial.  We now hold that delays attributable to our COVID-19 orders do not weigh against the Commonwealth in evaluating whether a defendant's constitutional right to a speedy trial has been violated.  We further conclude, after examining the history of this case, that the remaining, non-COVID-19-related delay did not exceed what is allowed under rule 36 (b), nor did the over-all delay in bringing the defendant to trial violate the defendant's rights under the Sixth Amendment or art. 11.  Accordingly, we affirm the defendant's convictions.    
     Background.  On the morning of February 24, 2019, the defendant, having consumed a significant quantity of methamphetamine, engaged in a roughly fifteen-minute crime spree during which he attempted to break into a home and engaged in a physical altercation with a person he encountered there, stopped two different vehicles at gun point, and attempted to break into a second home where he had to be forcibly rebuffed by its owner.  Police apprehended the defendant at the second house.  
     Procedural history.  On April 29, 2019, the defendant was indicted on twenty-one charges involving seven different victims based on the conduct described above,[1] and he was arraigned on May 17, 2019.[2]  On the day of arraignment, the defendant filed a written motion for mandatory discovery, pursuant to Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004).  The motion was allowed the same day.
     Approximately six months later, on November 8, 2019, the defendant moved to compel production of mandatory discovery, specifically seeking "gun shot tests and reports" as well as "[g]rand [j]ury [minutes] with exhibits."  At a hearing on November 12, 2019, the prosecutor represented that the grand jury minutes had not yet been produced due to a stenographer shortage and estimated that it would likely be another thirty to sixty days before the Commonwealth could obtain the minutes and turn them over to the defendant.  Defense counsel objected to the delay, emphasized that the defendant was being held on a high cash bail, and requested that the time spent obtaining the grand jury minutes not be excluded from any speedy trial calculation.  The judge was of the view that the defendant's only remedy at that time was a bail hearing, which was scheduled for December 17, 2019, at the defendant's request.  In addition, the judge allowed the defendant's motion to compel, but ruled that the time would be excluded from the speedy trial calculation on the ground that "this is not of the Commonwealth's doing and it's to benefit the defendant."  
     The docket reflects that, at the joint request of the parties, neither the bail hearing scheduled for December 17, 2019, nor a subsequent pretrial hearing scheduled for February 11, 2020, took place.  See Barry v. Commonwealth, 390 Mass. 285, 289 (1983) ("When a claim is raised under rule 36, the docket and minutes of the clerk are prima facie evidence of the facts recorded therein"). 
     In a series of COVID-19-related orders that were necessary to reduce the spread of the virus, we continued all jury trials from March 13, 2020, to October 1, 2021 (first COVID-19 continuance period).[3]  By their terms, each of the COVID-19 orders excluded the resulting delay from speedy trial computations based on rule 36 (b) (2) (F).  See Commonwealth v. Lougee, 485 Mass. 70, 71 (2020). 
     On August 3, 2020 -- during the first COVID-19 continuance period -- the defendant filed a motion to dismiss (discovery motion to dismiss) based on the Commonwealth's failure to produce mandatory discovery –- specifically the ballistics test results from the State police crime laboratory (crime lab).  On November 12, 2020, the defendant filed an amended motion to dismiss, again citing the absence of mandatory discovery (amended discovery motion to dismiss).  On November 20, 2020, the Commonwealth filed a response stating that the ballistics examiner's report "[did] not currently exist . . . [d]ue to staffing issues" but that "[t]he Commonwealth has assured the court that it will make all efforts to have this testing reassigned and expedited."  
     Also during the first COVID-19 continuance period, the defendant changed representation several times.  His first counsel was allowed to withdraw on July 14, 2020, and successor counsel was appointed.  On September 21, 2020, the defendant moved to proceed pro se.  Following a hearing on October 7, 2020, that motion was allowed, and successor counsel filed an emergency motion to withdraw the same day.  On October 14, 2020, an attorney was appointed as standby counsel for the defendant.
     Also during the first COVID-19 continuance period, the defendant, acting pro se, filed a motion for reduction of bail, a motion to correct the docket, a motion to dismiss the habitual offender enhancements, two motions to dismiss, a motion for discovery, and a motion to suppress.  These motions were filed in two batches, on November 30, 2020, and December 2, 2020.
     On December 16, 2020, a different judge (second judge) denied the defendant's amended discovery motion to dismiss, concluding that "[a]ny delay by the Commonwealth in producing ballistics testing [did] not warrant the extreme sanction of dismissal," and ordered the Commonwealth to file a status report by January 4, 2021, outlining its compliance with all discovery obligations.  The defendant filed a motion to reconsider this ruling on December 30, 2020.[4]  
     The defendant received all mandatory discovery before the conclusion of the first COVID-19 continuance period.  
     On October 28, 2021 -- twenty-seven days after the end of the first COVID-19 continuance period -- a status conference was held before a different judge (third judge).  At the third judge's request, the parties submitted an agreed-upon list of unresolved motions showing six outstanding motions the defendant had filed pro se during the first COVID-19 continuance period.[5]  Hearings on these outstanding motions had taken place on February 3, 2021, and April 8, 2021.  The last of the motions to be resolved was the defendant's motion to reconsider, which he had filed on December 30, 2020.  That motion was denied on February 8, 2022.  
     After a resurgence in COVID-19 infections, we again continued all jury trials from January 3, 2022, to February 14, 2022, and then from that date until the earliest of either a scheduled commencement of trial or March 14, 2022 (second COVID-19 continuance period), and again excluded the time from speedy trial calculations under rule 36 (b).  Supreme Judicial Court, First Amendment to Seventh Updated Order Regarding Court Operations under the Exigent Circumstances Created by the COVID-19 Pandemic, No. OE-144 (Dec. 31, 2021).  Supreme Judicial Court, Second Amendment to Seventh Updated Order Regarding Court Operations under the Exigent Circumstances Created by the COVID-19 Pandemic, No. OE-144 (Jan. 24, 2022).
     At a status conference on March 10, 2022, trial was set for August 1, 2022, and a final pretrial conference was subsequently scheduled to occur on July 18, 2022.
     On May 17, 2022,[6] the defendant moved to rescind his previous waiver of counsel and requested that standby counsel be appointed to represent him.  He also objected to any tolling of rule 36 associated with this request.  The motion was allowed, but the judge (fourth judge) ruled that the August 1, 2022, trial date would not be adjusted.  The fourth judge did not address the defendant's request regarding excluding the period for purposes of rule 36. 
     On June 28, 2022, the defendant moved to continue both the pretrial conference and the trial date for several months, on the ground that his counsel was pursuing "a theory of defense that requires the hiring of an expert" and "more documentation is required to pursue the theory."  After a hearing on July 8, 2022, a different judge (fifth judge) allowed the motion over the Commonwealth's objection.  
     On July 8, 2022, pursuant to Mass. R. Crim. P. 14 (b) (2) (A), the defendant filed a notice of intent to assert a mental health defense.  Also on that date, the defendant filed a motion to dismiss, claiming that the delay in bringing his case to trial violated rule 36 (b) (rule 36 motion), which the Commonwealth opposed.  A hearing on the rule 36 motion took place on August 17, 2022, and the motion was taken under advisement.  At a subsequent hearing on October 17, 2022, the fifth judge stated that he "need[ed] additional time to complete [his] decision," and estimated that he would need an additional thirty days.  The prosecutor requested that the rule 36 clock be tolled, a request to which the defendant objected.  The fifth judge continued the case to November 16, 2022, and excluded the period until November 16, 2022, from speedy trial calculation under rule 36.  
     More quickly than he had anticipated, the fifth judge issued his decision denying the rule 36 motion on November 1, 2022.  The fifth judge concluded that four days remained on the rule 36 clock as of the date the defendant had filed his rule 36 motion, i.e., July 8, 2022.  He reached that conclusion by excluding five different periods.  The first excluded period was the 123 days from November 12, 2019, to March 13, 2020, when the grand jury minutes were not available and the bail and other hearings were taken off the calendar at the parties' joint request.  The second and third excluded periods represented the 638 days of the first and second COVID-19 continuances.[7]  The fourth excluded period was the sixteen days from May 17, 2022, when the defendant filed his motion to rescind his waiver of counsel, to June 1, 2022, when the motion was allowed.  The fifth excluded period was the ten days from June 28, 2022, when the defendant filed his motion to continue the pretrial conference and trial dates, until July 8, 2022, when the motion was allowed.[8]
     At a hearing on November 16, 2022, the prosecutor informed the judge (sixth judge) that the defendant had notified the Commonwealth the day before that he intended to call a new expert witness at trial.  The sixth judge deferred making any ruling regarding the newly disclosed expert, leaving the issue to be resolved by the trial judge.  In addition, the sixth judge set the final pretrial conference for November 18, 2022, and set trial for November 28, 2022, which was the date the prosecutor represented that the Commonwealth's witnesses would be available, taking into account holiday and travel plans.  The prosecutor also requested that the period until the trial date be excluded from the rule 36 calculation.  The defendant objected to any continuance of the trial date, indicating that he was "ready to go."  The judge allowed the continuance and ruled that it was in "the interests of justice . . . due to the current unavailability of essential witnesses for the Commonwealth."  
     Two days later, at the final pretrial conference held before the trial judge on November 18, 2022, further discussion of the defendant's newly disclosed expert took place, and the defendant ultimately consented to a continuance to allow the Commonwealth time to "look further into" the new expert.  The defendant agreed to a December 5, 2022, status conference date and for the period until then to be excluded from speedy trial calculation under rule 36.
     At the December 5, 2022, status conference, the prosecutor requested a trial date of January 17, 2023, which he said "reflect[ed] the availability of all the [Commonwealth's] witnesses in the case," accommodating for vacations, holidays, and the return to college classes.  The defendant objected, requested that the case "be set up for trial immediately," and "object[ed] to further continuance[s]."  The trial judge adopted the trial date proposed by the prosecutor and ruled that rule 36 would be tolled until then.  The trial judge made written findings explaining that the "ends of justice served" by the new trial date outweighed the public and the defendant's interest in a speedy trial.  
     The defendant's jury-waived trial began on January 17, 2023, on which date the defendant filed a renewed rule 36 motion based on the delay that had occurred since the denial, on November 1, 2022, of his previous rule 36 motion.  The trial judge heard argument on the renewed rule 36 motion after the close of the evidence and then (1) transferred the renewed rule 36 motion to the fifth judge (who had ruled on the original rule 36 motion) for determination, and (2) continued the trial to February 10, 2023.
     After a hearing, the fifth judge denied the defendant's renewed rule 36 motion.  The fifth judge concluded that the time from the date of his ruling on the defendant's rule 36 motion to the date on which the defendant filed his renewed rule 36 motion was entirely excluded from the rule 36 speedy trial calculation.[9][10]
     Thereafter, the defendant's trial resumed with closing arguments on February 10, 2023.  Ultimately, the defendant was convicted of unlawful possession of a firearm as a third offense, armed assault with intent to rob, two counts of assault and battery by means of a dangerous weapon, five counts of assault by means of a dangerous weapon, two counts of armed carjacking, malicious damage to a motor vehicle, assault with intent to rob, breaking and entering in the daytime with intent to commit a felony, and possession of burglarious tools.[11]  The defendant timely appealed from his convictions, and we granted his application for direct appellate review.  
     Discussion.  The defendant argues that the Commonwealth cannot justify under rule 36 the delay between arraignment and trial.  In addition, he argues that his constitutional right to a speedy trial, guaranteed by the Sixth Amendment and art. 11, was violated.  
     1.  Rule 36.  a.  Overview.  Rule 36 (b) (1) (C) provides that a "defendant shall be tried within twelve months after the return day."[12]  The rule thus establishes two points that may be no more than twelve months apart, subject to exclusions under rule 36 (b) (2) and to common-law principles.  The first point is the return date, which is the date on which "a defendant is ordered by summons to first appear or, if under arrest, does first appear . . . to answer to the charges."  Mass. R. Crim. P. 2 (b) (15), as amended, 397 Mass. 1226 (1986).  The terminal point is the commencement of trial.  For purposes of the rule, "a trial is deemed to have commenced when jeopardy attaches" which, in the case of a nonjury trial such as here, is "when the court begins to hear evidence."  Reporter's Notes to Mass. R. Crim. P. 36 (b) (1), Massachusetts Rules of Court, Rules of Criminal Procedure, at 215 (Thomson Reuters 2025), quoting Serfass v. United States, 420 U.S. 377, 388 (1975).  In the case of a jury trial, "jeopardy attaches when a jury is empaneled and sworn."  Reporter's Notes, supra, quoting Serfass, 420 U.S. at 388.
     A defendant who is not brought to trial within one year of the return date "is presumptively entitled to dismissal of the charges unless the Commonwealth justifies the delay."  Commonwealth v. Dirico, 480 Mass. 491, 497 (2018), quoting Commonwealth v. Spaulding, 411 Mass. 503, 504 (1992).  In such circumstances, the burden then "shifts to the Commonwealth to justify the delay."  Dirico, 480 Mass. at 497.  See Commonwealth v. Graham, 480 Mass. 516, 524 (2018) ("burden is on the Commonwealth to demonstrate that a delay should be excluded under rule 36 [b] [2]").
     The Commonwealth may meet that burden by showing that the delay falls into one or more of the "excluded periods" listed in rule 36 (b) (2)[13] or that "the defendant acquiesced in, was responsible for, or benefited from the delay."  Graham, 480 Mass. at 517, quoting Spaulding, 411 Mass. at 504.  We apply these common-law principles because "the opportunity conferred by the rule is not a fundamental constitutional right, or even a right created by statute, [and thus] the application of 'traditional indicia of waiver of rights' is appropriate."  Barry, 390 Mass. at 296, quoting Commonwealth v. Carr, 3 Mass. App. Ct. 654, 656 (1975).[14]  See Dirico, 480 Mass. at 498-499; Commonwealth v. Farris, 390 Mass. 300, 305 (1983).  See also Graham, 480 Mass. at 523-530; Commonwealth v. Mattos, 404 Mass. 672, 675 (1989); Commonwealth v. Campbell, 401 Mass. 698, 702 (1988).  However, "time can be excluded under rule 36 based on a defendant's acquiescence only where the defendant has agreed to or failed to object to a continuance or other delay[;] the scheduling of an event alone does not constitute delay."  Graham, 480 Mass. at 518.  Once the Commonwealth "establishes that an act or event triggers an excludable period of time [under rule 36 (b) (2)], the exclusion of the period is automatic."  Id. at 524, quoting Barry, 390 Mass. at 292.  "Computation of an excluded period shall include both the first and the last day of the excludable act or event."  Mass. R. Crim. P. 36 (b) (3).
     If a defendant establishes a prima facie delay of more than one year for which "the Commonwealth offers no justification, the defendant is entitled to dismissal of the indictment without a showing of prejudice.  See Mass. R. Crim. P. 36 (b) (1) (D), 378 Mass. 910 (1979), and Reporter's Notes."  Barry, 390 Mass. at 291, quoting Commonwealth v. Look, 379 Mass. 893, 898-899 n.2, cert. denied, 449 U.S. 827 (1980).  See Commonwealth v. Lasher, 428 Mass. 202, 205 (1998).  Dismissal under the rule is with prejudice.  Dirico, 480 Mass. at 497, citing Commonwealth v. Lauria, 411 Mass. 63, 71 (1991).  
     b.  Standard of review.  "In reviewing a defendant's speedy trial claim on appeal, we accept the judge's findings of fact absent clear error where the judge's findings rest on his or her evaluation of the credibility of a witness testifying at an evidentiary hearing, or where the judge's findings rest on his or her memory of events from presiding over the proceedings."  Dirico, 480 Mass. at 496.  But where the judge's findings rest solely on the docket, the clerk's minutes, and evidence contained in the record, "[w]e are in as good a position as the judge below to decide whether the time limits imposed by the rule have run."  Id., quoting Commonwealth v. Denehy, 466 Mass. 723, 730 (2014).  See Commonwealth v. Rodgers, 448 Mass. 538, 540 (2007).  
     c.  Analysis and application.  Here, the defendant has established a prima facie violation of rule 36 (b) (1) (C) because 1,341 days elapsed from the date of his arraignment on May 17, 2019, to the date when his jury-waived trial began on January 17, 2023.  See Dirico, 480 Mass. at 497.  The Commonwealth does not contest that 267 days of delay are properly included on the rule 36 clock:  (1) the 178 days between the defendant's date of arraignment, May 17, 2019, and the first pretrial hearing on November 12, 2019; (2) the sixty-three days from March 15, 2022, to May 16, 2022, after the second COVID-19 continuance period ended and before the defendant filed his motion to rescind his waiver of counsel; and (3) the twenty-six days from June 2, 2022, to June 27, 2022, before the defendant filed his June 28, 2022 motion to continue the final pretrial conference and trial dates.  At the same time, the defendant acknowledges that the following periods are properly excludable:  (1) the 639 days of the first and second COVID-19 continuances,[15] see Lougee, 485 Mass. at 71; (2) the forty-one days from the defendant's filing of his original rule 36 motion to dismiss to the hearing on the motion, see Commonwealth v. Roman, 470 Mass. 85, 93 (2014); (3) the sixty-day agreed-upon continuance from August 18, 2022, to October 16, 2022; and (4) the seventeen-day continuance from November 18, 2022, until December 5, 2022, which was at the defendant's request, see rule 36 (b) (2) (F).
     What remains is whether the Commonwealth has met its burden to show that no more than ninety-eight days of the following seven disputed periods are properly included toward rule 36's 365-day limit, either because they fall within the excludable periods enumerated in rule 36 (b) (2) or because the defendant acquiesced in, was responsible for, or benefited from the delay.  See Graham, 480 Mass. at 517.  
     i.  Discovery delay.  The defendant argues that the 122-day delay from November 13, 2019 (the day after the defendant's motion to compel was allowed), to March 13, 2020 (the date the first COVID-19 continuance period began), is not excludable because the Commonwealth failed to timely produce mandatory discovery –- specifically the grand jury minutes and a ballistics report.  
     To avoid forcing a defendant to choose between his speedy trial rights and pressing to receive the mandatory discovery to which he or she is entitled, the time spent to resolve a motion to compel mandatory discovery pursuant to Mass. R. Crim. P. 14 is not automatically excluded from the rule 36 speedy trial calculation.  Commonwealth v. Taylor, 469 Mass. 516, 518 (2014).  Instead, a judge is to assess whether to exclude the time on a "case-by-case basis," id., to determine whether "'the ends of justice served' by [granting a continuance and] excluding the time outweigh 'the best interests of the public and the defendant in a speedy trial,'" Dirico, 480 Mass. at 502, quoting Taylor, 469 Mass. at 528.  See Mass. R. Crim. P. 36 (b) (2) (F).  The judge "must evaluate whether 'the Commonwealth [can] demonstrate[] that its delayed production was not due to wilful noncompliance or lack of due diligence,' which may render it 'appropriate for the speedy trial clock to be tolled.'"  Dirico, 480 Mass. at 504, quoting Taylor, 469 Mass. at 528.  
     At the hearing on the defendant's motion to compel, the prosecutor informed the judge that the delay in producing grand jury minutes was "pervasive" due to a stenographer shortage and asserted that he had no "direct control" over the situation.  No mention was made of the ballistics evidence.  The judge allowed a one-month continuance until December 17, 2019, and ruled orally that the time would "not count against the Commonwealth" because "as it's been presented to me, I'm finding that this is not of the Commonwealth's doing and it's to benefit the defendant."
     Although not explicitly so phrased, we read the judge to have implicitly found that "the ends of justice" would be served by allowing the one-month continuance.  Mass. R. Crim. P. 36 (b) (2) (F).  See Commonwealth v. Davis, 91 Mass. App. Ct. 631, 637 n.11 (2017) ("Such findings need not be explicit, but may be implied from the record").  We have previously held that a judge's decision to allow the Commonwealth a continuance to "accommodate the interests of all parties" where the judge "expected no prejudice to anyone" was sufficient for purposes of rule 36 (b) (2) (F), even where the judge did not explicitly invoke the "ends of justice."  Graham, 480 Mass. at 528.  Similarly here, the judge evaluated the circumstances, found that the delay was not precipitated by any fault of the Commonwealth, and found that the continuance would work to the defendant's benefit in the sense of getting him material that could not be made available more quickly.  See Dirico, 480 Mass. at 504 (judge must evaluate whether Commonwealth demonstrates "that it's delayed production was not due to wilful noncompliance or a lack of due diligence").  Contrast Davis, 91 Mass. App. Ct. at 636-638 (concluding there was insufficient explanation from judge to infer rule 36 [b] [2] [F] was satisfied).  Understood in this way, the judge's ruling was sufficiently tied to the "two salutary purposes" of rule 36 (b) (2) (F):  first, to "provide[] a means through which parties can protect themselves against the rigors of the rule"; and "[s]econd, . . . to ensure that courts meet their obligations to the public to try criminal defendants swiftly."  Barry, 390 Mass. at 297-298.  Therefore, the time from the first pretrial hearing on November 12, 2019, to December 17, 2019, is properly excluded from the rule 36 speedy trial calculation.
     December 17, 2019, came and went without production of the grand jury transcripts or ballistics test results.[16]  But the defendant neither renewed his motion to compel nor moved for sanctions pursuant to Mass. R. Crim. P. 14 (a) (1) (C) (rule 14 [a] [1] [C]).  Instead, the defendant joined the Commonwealth in asking to remove the December 17, 2019 scheduled bail hearing date from the calendar, as well as the next scheduled pretrial hearing set for February 11, 2020.  No other activity is reflected on the docket before the first COVID-19 continuance period began on March 13, 2020.
     "Where a defendant contends that he or she is being denied the right to a speedy trial because of excessive delays in the completion of [mandatory discovery], a defendant must move to compel the production of that [discovery] or move for sanctions pursuant to rule 14 (a) (1) (C)."  Dirico, 480 Mass. at 503.  We have encouraged defendants to file a rule 14 (a) (1) (C) motion for sanctions "when undue delay has caused a continuance and the defendant seeks to prevent the need for a further continuance.  Bringing this type of motion alerts the judge that the defendant is actively contesting the delay, rather than sitting by passively."  Id.  This is what should have happened here.  The defendant's motion to compel resulted in a one-month continuance.  But when the continuance ended and he still had not received the outstanding discovery, the defendant did not return to court to seek further relief from the judge.  Instead, he joined in removing the next two scheduled court dates from the calendar, leaving undisturbed the judge's earlier findings regarding the reasons for the delayed discovery.  In short, although it appears that the Commonwealth did not produce the grand jury minutes or the ballistics information before March 13, 2020, the defendant at best sat by passively without contesting the delay.  In these circumstances, we conclude that the period from December 17, 2019, to March 13, 2020, is properly excluded from the rule 36 speedy trial calculation.
     ii.  Pretrial motions.  The defendant filed various pretrial motions in November and December of 2020, and those motions were heard on February 3, 2021, and April 8, 2021.  Six of the motions remained unresolved when the first COVID-19 continuance ended on October 2, 2021.  In other words, none of those six motions was resolved within the thirty-day period that is excludable from the rule 36 calculation for motions under advisement.  See Mass. R. Crim. P. 36 (b) (2) (A) (vii) ("delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement" excluded from speedy trial calculation); Roman, 470 Mass. at 94 (thirty-day excludable period for motions under advisement).  The last of the six motions outstanding as of October 2, 2021, was not resolved until months later, on February 8, 2022, during the second COVID-19 continuance.  
     The Commonwealth argues that the period between the two COVID-19 continuance periods should be excluded from the rule 36 clock because the defendant's later pursuit in July 2022 of a mental health defense shows that he was even at that later date not ready for trial and, therefore, that he benefited from the delay in deciding his motions.  We are not persuaded.  Cf. Graham, 480 Mass. at 524 (Commonwealth need not show effect on trial date if delay falls into one of rule 36 [b] [2] exclusions).  The Commonwealth has not shown any connection between the pending motions and the defendant's mental health defense, let alone that the delayed resolution of those motions in any way aided or furthered that defense.  The motions were a motion to correct the docket, a motion to dismiss the habitual offender enhancements, a motion to dismiss, a motion for discovery, a motion to suppress, and a motion for reconsideration of the amended first motion to dismiss for discovery violations –- none having any apparent connection to a potential mental health defense.  Moreover, the defendant repeatedly objected to the delay in deciding the motions and filed notices with the court identifying them.  Therefore, the ninety-three days from October 2, 2021 (when the first COVID-19 continuance period ended), to January 2, 2022 (when the second COVID-19 continuance period began), when the defendant's motions remained under advisement beyond thirty days, are included in the rule 36 speedy trial calculation. 
     iii.  Motion to rescind waiver of counsel.  On May 17, 2022, in the face of an approaching trial date, the defendant filed a motion to rescind his waiver of counsel, which was heard and allowed on June 1, 2022.  The defendant argues that these sixteen days should not be excluded from the rule 36 computation for two reasons.  First, he contends the motion should not be considered a "pretrial motion" for purposes of rule 36 (b) (2) (A) (v), which excludes "delay resulting from hearings on pretrial motions."  Second, the defendant argues that because the judge who allowed the motion declined to adjust the trial date, there was no "delay" for purposes of the rule 36 (b) (2) exclusions.
     Setting aside whether the time should be excluded under any of the rule 36 (b) (2) exclusions, the Commonwealth has shown that the sixteen-day period from the filing of the defendant's motion to rescind his previous waiver of counsel to the judge's ruling on that motion are excludable under our common law because the defendant benefited from the delay.  See Graham, 480 Mass. at 529.  Periods when a defendant does not have permanent counsel, or where counsel are in flux, may be excluded from the speedy trial clock because the defendant benefits from having counsel appointed to represent him.  Such is the case here.  Dissatisfied with his first two counsel, the defendant elected to proceed pro se.  Thereafter, once a trial date was set, the defendant changed his mind about proceeding pro se, moved to rescind his previous waiver of counsel, and asked that standby counsel be appointed to represent him.  The defendant's various representation-related motions were acted on promptly.  These circumstances fall comfortably within our reasoning in Denehy, 466 Mass. at 732, and Commonwealth v. Marable, 427 Mass. 504, 506 (1998), where we excluded from the speedy trial calculation periods associated with changes in counsel on the ground that the defendant benefited from the delay.  See Commonwealth v. Judd, 25 Mass. App. Ct. 921, 923 (1987).  
     Our conclusion that the defendant benefited from having standby counsel appointed to represent him does not rest solely on the accepted proposition that a criminal defendant is better served when represented by counsel.  See Johnson v. Zerbst, 304 U.S. 458, 462-463 (1938) ("[The Sixth Amendment] embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel").  It is also buttressed by the specifics of this case where, once appointed, counsel explored and developed new lines of defense for the case, including pursuing a defense requiring an expert witness, and the fact that these defenses were of sufficient merit that the defendant moved to continue the trial date in order to pursue them.  In short, the sixteen days from the filing of the defendant's motion to rescind his previous waiver of counsel to that motion's resolution are excluded from the rule 36 calculation because the defendant benefited from the delay.  It does not matter for this analysis that the delay had no effect on the scheduled trial date.  Cf. Graham, 480 Mass. at 518 (delay excluded due to defendant's acquiescence even where trial date or presumptive trial date is not affected).  
     iv.  Defendant's motion to continue.  On June 28, 2022, the defendant filed a motion to continue the final pretrial conference and trial date for "several months" in order to pursue the new theories of defense to which we referred in the preceding section.  The motion was allowed over the prosecutor's objection on July 8, 2022, after a hearing.  The defendant argues that the ten-day period from the filing of the motion to its allowance should be included in the rule 36 calculation because rule 36 (b) (2) (F) only excludes "[a]ny period of delay resulting from a continuance granted by a judge" (emphasis added).  In other words, the defendant reads rule 36 (b) (2) (F) to apply only to the period after a continuance is allowed, and not to the period a motion to continue is pending but not yet allowed. 
     We need not consider the defendant's argument concerning rule 36 (b) (2) (F) because, in any event, the ten days from the filing of the motion to the hearing on the motion are excludable under rule 36 (b) (2) (A) (v) as a reasonable "delay resulting from hearings on pretrial motions."  See Roman, 470 Mass. at 94 ("The period from [the date the motion was filed] to [the date of the hearing] is a reasonable time in which to schedule a hearing on the rule 36 motion, and is excludable for that reason").  See also Barry, 390 Mass. at 294 ("The filing of [a] motion, at least where a hearing promptly follows, tolls the running of the time in which a defendant must be tried").  The hearing on the defendant's motion to continue was held promptly, and the ten-day period from the filing of the motion to the hearing was eminently reasonable.  That period is accordingly excludable under rule 36 (b) (2) (A) (v).
     v.  Ruling on rule 36 motion.  The defendant contends that the last sixteen days of the period during which his rule 36 motion to dismiss was under advisement should be included in the speedy trial calculation.[17]  Although the defendant acknowledges that the judge allowed himself "additional time to complete [his] decision" and that the prosecutor requested that rule 36 be tolled "in the interest of justice," the defendant argues that the judge's failure to make an explicit contemporaneous finding to that effect means that the period cannot be excluded under rule 36 (b) (2) (F).  The Commonwealth argues that the necessary findings were implicit and, in any event, that they were later made explicit.
     To be sure, the better course is for a judge to make an explicit contemporaneous finding on the record as required under rule 36 (b) (2) (F).  "Such a finding is not burdensome for a judge to make . . . ; the judge need only find, orally on the record or in writing, that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial . . . ."  Graham, 480 Mass. at 530.  However, the absence of an explicit finding is not necessarily fatal.  Where, as here, it is clear from the transcript that the judge's allowance of the continuance came after the prosecutor invoked the interests of justice when asking that the speedy trial clock be tolled, such a finding may be implicit.  See Davis, 91 Mass. App. Ct. at 637 n.11 (judge's finding that "ends of justice" are served may be implied). 
     Moreover, the judge subsequently made the necessary findings and analysis, explaining that he was "without the adequate time to make a fulsome ruling on the record and to explain the reason for the continuance," that the continuance was necessary based on the complexity of the defendant's rule 36 motion to dismiss, and that the defendant was not prejudiced by the delay as he had yet to identify an expert witness, a fact known to the judge when he allowed the continuance.  
     Relying on the Reporter's Notes to Mass. R. Crim. P. 36 (b) (2) (F), the defendant argues that the judge's findings were an impermissible "after-the-fact appraisal of the causes of delay by a reviewing court."  The defendant overlooks that what occurred here was not a post hoc rationalization by an appellate court, but rather an explanation from the very judge who ruled on the motion in the first instance -- albeit an explanation that occurred after the ruling itself.  There are meaningful distinctions between these two things, not least that the judge acting on the motion has firsthand knowledge of the reasons why he or she allowed the continuance and is therefore in the best position to make the findings necessary under rule 36 (b) (2) (F).  Moreover, as we have already determined, the judge made a contemporaneous implicit finding that the ends of justice served by granting the continuance outweighed the best interest of the public and the defendant in a speedy trial.  Accordingly, the judge's later explanation does not carry the risks that post hoc rationalizations in other cases might carry.  For these reasons, the sixteen days from October 17, 2022, to November 1, 2022, are excludable from the rule 36 calculation.
     vi.  Commonwealth's motion for a continuance.  On November 16, 2022, the Commonwealth moved to continue the trial date by twelve days to November 28, 2022, because essential witnesses, including the alleged victims, were unavailable.[18]  The judge allowed the motion, finding that "this relatively brief continuance is in the interest of justice . . . in that it's necessary for the Commonwealth to secure the presence of a number of essential witnesses."  Two days after this ruling, the defendant moved to continue the trial even further, agreeing to a status conference on December 5, 2022, with the trial to take place sometime thereafter. 
     The defendant asserts that the two days between the judge's allowance of the Commonwealth's motion to continue and the filing of his own motion to continue should be included in the speedy trial calculation.  But the judge's explanation for allowing the Commonwealth's motion to continue expressly satisfied the requirements of rule 36 (b) (2) (F), and thus the two days from the hearing to the filing of the defendant's motion for a continuance are properly excluded from the speedy trial calculation.  
     vii.  Continuance based on witnesses' availability.  On December 5, 2022, at the conclusion of the continuance previously requested by the defendant, the parties appeared before the trial judge to set a new trial date.  The prosecutor informed the trial judge that his office "ha[d] spent the last two weeks talking to everyone involved in this case, coming up with all their different schedules around vacation time and the holidays."  The prosecutor represented that the Commonwealth's expert would not be available until mid-January and requested that, given vacation and holiday schedules of other witnesses, including the multiple victims, trial commence on January 17, 2023.  The trial judge allowed the request over the defendant's objection.  In a written decision, the trial judge ruled that "the ends of justice served by setting [the trial date] outweigh the best interests of the public and the defendant in a speedy trial due to the unavailability of essential witnesses for the Commonwealth until January 17, 2023.  The calculation of time pursuant to [r]ule 36 is tolled to January 17, 2023, accordingly."
     The defendant argues that the period from December 5, 2022, to January 17, 2023, cannot be excluded from the speedy trial calculation under the exclusion for unavailable witnesses, rule 36 (b) (2) (B), because the Commonwealth failed to establish that the witnesses' "presence for trial cannot be obtained by due diligence or [they] resist[] appearing at or being returned for trial."  Mass. R. Crim. P. 36 (b) (2) (B).  In essence, the defendant's argument is that witness convenience is not the same as unavailability for purposes of rule 36 (b) (2) (B).  
     We need not reach this argument because the judge did not base his decision on rule 36 (b) (2) (B), but rather on rule 36 (b) (2) (F), and the judge made the specific findings necessary under the latter subsection.  See Graham, 480 Mass. at 528 (permissible to exclude time under rule 36 [b] [2] [F] for unavailability of essential witness).  The defendant argues that rule 36 (b) (2) (F) should not apply here because it applies only to continuances and the scheduling of a previously unscheduled trial date is not a "continuance" or "delay."  See id. at 532-533 ("where a defendant agrees for the first time to schedule a previously unscheduled event, there is no 'continuance' or 'delay' that can be excluded under rule 36").  But, in fact, the trial date was not "previously unscheduled."  Indeed, it had been previously scheduled first for August 1, 2022, and then for November 28, 2022.  Both of those dates were continued at the defendant's request.  It would upend both reason and language to say that a previously set trial date continued at the defendant's request is to be considered "previously unscheduled" for purposes of rule 36 (b) (2) (F).
     What remains is whether the judge abused his discretion in finding that the ends of justice served by granting the continuance outweighed the best interest of the public and the defendant in a speedy trial.  Mass. R. Crim. P. 36 (b) (2) (F).  Dirico, 480 Mass. at 498 n.7.  We discern no abuse of discretion here.  The ends of justice were certainly served by selecting a trial date on which all the Commonwealth's witnesses would be able to appear in court.  And, in this case, the unusually large number of victims made scheduling more complicated, particularly over the end-of-year holiday period.  The judge could also consider that the Commonwealth had been ready to proceed to trial with all its witnesses on an earlier scheduled trial date that had been continued at the defendant's request.  This was not a situation where the Commonwealth was interposing delay for no reason or without having made reasonable efforts to obtain its witnesses for trial.  The period from December 5, 2022, to January 17, 2023, is properly excludable under rule 36 (b) (2) (F).[19]
     d.  Summation.  For the reasons set out above, the Commonwealth has met its burden to show that no more than ninety-eight additional days are properly included in the rule 36 speedy trial calculation.   
     2.  Constitutional speedy trial rights.  In addition to his rule 36 argument, the defendant also claims that his constitutional speedy trial rights under the Sixth Amendment, as incorporated through the Fourteenth Amendment, and under art. 11 have been violated.  "We note at the outset that rule 36 is a 'rule of case management' and, accordingly, 'is wholly separate from [a defendant's] constitutional right to a speedy trial.'"  Dirico, 480 Mass. at 504, quoting Lauria, 411 Mass. at 67.  As a result, even where, as here, rule 36 has not been violated, a defendant who claims that his or her constitutional right to a speedy trial has been violated is entitled to review of that claim.  Dirico, 480 Mass. at 504.  
     a.  Text and purpose.  The second sentence of art. 11, which provides that "[every subject of the Commonwealth] ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws," "gives a defendant in a criminal case a right to a speedy trial."  Commonwealth v. Hanley, 337 Mass. 384, 387, cert. denied, 358 U.S. 850 (1958).  A defendant's right to a speedy trial is also guaranteed by the Sixth Amendment, which provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  "[T]he right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment," and "has its roots at the very foundation of our English law heritage."  Klopfer v. North Carolina, 386 U.S. 213, 223 (1967).
     The speedy trial guarantee "is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."  United States v. MacDonald, 456 U.S. 1, 8 (1982).  Another purpose behind the guarantee is to "limit the possibilities that long delay will impair the ability of an accused to defend himself."  Commonwealth v. Gove, 366 Mass. 351, 360 (1974), overruled on other grounds by Commonwealth v. Butler, 464 Mass. 706 (2013), quoting United States v. Marion, 404 U.S. 307, 320 (1971).
     b.  When right attaches.  Under art. 11, the speedy trial guarantee attaches when "arrest, indictment, or a criminal complaint [has] issued pursuant to Massachusetts law, whichever comes first."  Butler, 464 Mass. at 712.  By contrast, under the Sixth Amendment, although the period between arrest and indictment must be considered in evaluating a speedy trial claim, "no Sixth Amendment right to a speedy trial arises until charges are pending."  MacDonald, 456 U.S. at 7.  See Marion, 404 U.S. at 313.
     c.  Standard of review.  Although the defendant raises his constitutional speedy trial argument for the first time on appeal, we do not employ our ordinary standard of review for unpreserved constitutional claims, including unpreserved claims for violations of other fundamental rights.  Nor do we employ our traditional standard of review for preserved constitutional claims.[20]  Instead, we review both preserved and unpreserved speedy trial claims brought under art. 11 using the four-factor test the United States Supreme Court adopted in Barker v. Wingo, 407 U.S. 514, 530 (1972), for speedy trial claims under the Sixth Amendment.  See Dirico, 480 Mass. at 505 ("We interpret art. 11 through the lens of Sixth Amendment analysis").  See also Commonwealth v. Wallace, 472 Mass. 56, 60 (2015); Butler, 464 Mass. at 709 n.5.  That test eschews the demand-waiver principle and instead incorporates "the defendant's assertion of or failure to assert his right to a speedy trial [as] one of the factors to be considered in an inquiry into the deprivation of the right."  Commonwealth v. Horne, 362 Mass. 738, 742 (1973), quoting Barker, 407 U.S. at 528.
     d.  Barker analysis.  "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  Butler, 464 Mass. at 709-710 (2013), quoting Doggett v. United States, 505 U.S. 647, 651-652 (1992).  See Commonwealth v. Carr, 464 Mass. 855, 860 (2013); Look, 379 Mass. at 898; Commonwealth v. Gilbert, 366 Mass. 18, 22 (1974).  "The burden of establishing 'presumptively prejudicial delay' is relatively modest –- '[d]epending on the nature of the charges, . . . courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."  Dirico, 480 Mass. at 505-506, quoting Doggett, 505 U.S. at 652 n.1.  See Commonwealth v. Boyd, 367 Mass. 169, 180 (1975).  That threshold was easily crossed here:  the defendant was not brought to trial until close to four years after he was initially charged by way of a complaint.  See Gilbert, 366 Mass. at 21 (thirty-one month delay sufficient to trigger serious consideration whether defendant deprived of speedy trial).
     But presumptive prejudice alone cannot carry a speedy trial claim.  Butler, 464 Mass. at 710.  Instead, where, as here, a defendant has "established presumptive prejudice," we apply the four-factor framework articulated in Barker "to evaluate whether the defendant's constitutional right to a speedy trial has been violated" (citation omitted).  Dirico, 480 Mass. at 506.  The Barker analysis consists of four nonexclusive factors that are to be weighed in their totality:  "the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to the defendant."  Id. at 506, 508.  "No single factor nor specific combination thereof is a 'necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.'"  Wallace, 472 Mass. at 72, quoting Barker, 407 U.S. at 533.  The Barker analysis "places the primary burden on the courts and the prosecutors to assure that cases are brought to trial."  Barker, 407 U.S. at 529.
     i.  Length of delay.  The length of the delay between accusation and trial "is not alone decisive on the issue of speedy trial."  Commonwealth v. Rodriguez, 380 Mass. 643, 652 (1980).  In various decisions, both the United States Supreme Court and this court have tolerated delays much longer than the time involved here "absent prejudice to the defendant resulting from the delay, or intentional conduct by the prosecution to frustrate the defense."  Id.  See, e.g., United States v. Loud Hawk, 474 U.S. 302, 314, 317 (1986) (ninety-month delay) Barker, 407 U.S. at 533, 536 (five-year delay); Wallace, 472 Mass. at 72 (nine-year delay); Carr, 464 Mass. at 866 (thirty-year delay).  That said, the delay in this case was substantial.  See Dirico, 480 Mass. at 506 (three-year delay was "substantial"); Commonwealth v. Lanigan, 419 Mass. 15, 18 (1994) (over four-year delay was "considerable"); Commonwealth v. McNair, 98 Mass. App. Ct. 750, 756 (2020) (five-year delay was "substantial" and "considerable").  
     ii.  Reason for the delay.  The second Barker factor looks at the reasons for the delay and assigns different weights for different reasons.  Barker, 407 U.S. at 531.  "Weighing most heavily against the government are deliberate attempts at delay."  Wallace, 472 Mass. at 61.  Neutral reasons "such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  Barker, 407 U.S. at 531.  Finally, "valid reason[s]," such as a missing witness, "justify appropriate delay" and do not weigh against the Commonwealth at all.  Id. 
     A.  COVID-19 delays.  The greatest contributors to the delay in bringing the defendant to trial were the delays occasioned by the orders we entered in response to the COVID-19 pandemic.  On March 10, 2020, the Governor declared a state of emergency, finding that COVID-19 was "a disaster that impacts the health, security, and safety of the public," and that it was "critical to take additional steps to prepare for, respond to, and mitigate the spread of COVID-19 to protect the health and welfare of the people of the Commonwealth."  Governor's Declaration of Emergency (Mar. 10, 2020).  Three days later, on March 13, 2020, we issued the first of our COVID-19-related orders continuing trials so as "to protect the public health by reducing the risk of exposure to the virus and slowing the spread of the disease."  Supreme Judicial Court, Order Regarding Empanelment of Juries, No. OE-144 (Mar. 13, 2020).  Faced with this public health emergency, we cumulatively continued trials for approximately twenty-one months during the first and second COVID-19 continuance periods.  
     The Commonwealth argues that these periods should be treated as "valid delay" and not weigh against the Commonwealth for speedy trial purposes.  The defendant, while acknowledging that the delays "may have been necessary to safeguard public health," argues that they were the result of an "institutional decision" and should therefore weigh against the Commonwealth to some degree.  He analogizes the COVID-19 continuance periods to court congestion, which is usually weighed, albeit lightly, against the Commonwealth.  See Commonwealth v. Beckett, 373 Mass. 329, 332 (1977).  The defendant draws support for his position from decisions in Vermont and Montana, which attributed COVID-19 delays to the State, but weighed them against the State minimally.  See State v. Hess, 2022 MT 212, ¶ 13; State v. Lebrecque, 2023 VT 36, ¶ 25, citing State v. Young, 2023 VT 10, ¶ 12.
     There is certainly no doubt that the COVID-19 continuances are attributable to the Commonwealth in the sense that they resulted from court orders.  But the underlying reason for the COVID-19 orders was something entirely out of the control of the Commonwealth, namely, a global pandemic.  See State v. Paige, 977 N.W.2d 829, 839 (Minn. 2022) (circumstances arising from internal factors such as court congestion are weighed moderately against State while external factors such as COVID-19 are not weighed against State).  The root cause of the delay was therefore not "institutional decision," as the defendant argues, or attributable to State action or inaction.  In addition, the defendant has not shown that the COVID-19 continuances were unnecessary or unduly prolonged.  The ongoing nature of the global pandemic made it necessary to continue, and subsequently resume, restrictions until such time as circumstances permitted the safe resumption of jury trials "in a manner that protected both the health and safety of all participants and the constitutional rights of criminal defendants."  Ali v. Commonwealth, 75 Va. App. 16, 44 (2022).  The pandemic struck our community and disrupted all facets of life.  
     We also consider that a delay caused by a global pandemic is distinct from other types of "neutral reason[s]" for delay that, even if not directly attributable to the prosecution, are nonetheless attributable to some branch of government.  Barker, 407 U.S. at 531.  See Butler, 464 Mass. at 716.  The COVID-19 pandemic was an unprecedented event beyond the control of any branch of government.  It bears similarities to natural or other types of unexpected disasters that have not been weighed against the State for speedy trial purposes under State or Federal law.  See Furlow v. United States, 644 F.2d 764, 767-768 (9th Cir.), cert. denied, 454 U.S. 871 (1981) (eruption of Mount St. Helens); United States v. Richman, 600 F.2d 286, 293-294 (1st Cir. 1979) ("Blizzard of '78"); United States v. Correa, 182 F. Supp. 2d 326, 327, 329 (S.D.N.Y. 2001) (terrorist attack on September 11, 2001); State v. Shannon, 17 So. 3d 1061, 1065 (La. Ct. App. 2009) (Hurricane Katrina); State v. Hamilton, 980 So. 2d 147, 150, 152 (La. Ct. App. 2008) (same).  Although the COVID-19 delay lasted far longer than these examples, its duration was driven by the nature of the highly communicable disease, as well as the impracticability, if not impossibility, of preventing transmission in a trial setting involving many participants in close quarters.  
     We accordingly conclude that the COVID-19 global pandemic was a "valid" reason that "serve[d] to justify appropriate delay," Barker, 407 U.S. at 531, and should not be weighed against the Commonwealth.  Our conclusion in this regard is consistent with our analysis in Mushwaalakbar v. Commonwealth, 487 Mass. 627, 636 (2021), where we held, in the context of evaluating a pretrial detainee's due process rights, that "delays caused solely by the COVID-19 pandemic are essentially 'a wash' and should not be weighed in favor of either party."  Our conclusion is also consistent with the majority of other States that have considered, for purposes of speedy trial analysis, the effect of delays caused by COVID-19.  See e.g., Quinnie v. State, 382 So. 3d 1275, 1280 (Ala. Crim. App. 2022) (period during COVID-19 pandemic where State was unable to bring defendant to trial due to jury trial suspension not held against State); Labbee v. State, 362 Ga. App. 558, 565-567 (2022) (delay caused by COVID-19 orders was "justified and appropriate" and therefore should not weigh against government); State v. Mansfield, 174 Idaho 690, 707 (2024) (emergency orders prohibiting jury trials in response to COVID-19 pandemic "presented a valid justification for appropriate delay"); Paige, 977 N.W.2d at 838 (trial delays due to chief justice's COVID-19 pandemic orders do not weigh against State); State v. Mize, 2022-Ohio-3163, ¶¶ 64-65 (Ct. App.) (COVID-19 delay was not State's fault or deliberate attempt to delay trial); State v. Tuinman, 2023 UT App 83, ¶¶ 62-63 (delay associated with COVID-19 pandemic not held against State); Ali, 75 Va. App. at 45 (COVID-19 delay was "valid, unavoidable, and outside the Commonwealth's control" and therefore not weighed against Commonwealth); State v. Coleman, 2025 WI App 7, ¶¶ 53-56 (giving no weight to delays brought about by suspension of jury trials due to COVID-19); Vlahos v. State, 2022 WY 129, ¶ 54 (delays caused by COVID-19 pandemic are neutral and not attributable to State).  
     B.  Other delays.  The defendant argues that three additional periods of delay should be weighed against the Commonwealth.  Specifically, he points to (1) the six months between arraignment and the first pretrial conference, (2) the period during which he did not receive mandatory discovery in the form of the grand jury minutes and the ballistics test results, and (3) the long delay in ruling on his pretrial motions.  We agree that all three periods should weigh lightly against the Commonwealth.
     As to the six months between arraignment and the first pretrial conference, the case proceeded on a timetable consistent with its designation to the "C" track under Superior Court Standing Order 2-86, Part III (2009).  There was no "delay" as that term is commonly understood, nor did the Commonwealth fail to prosecute the case; instead, the case merely proceeded in its ordinary course on the designated timetable.  Nonetheless, "the ultimate responsibility" for setting the schedule "must rest with the government rather than with the defendant," Barker, 407 U.S. at 531, and therefore we weigh this period lightly against the Commonwealth.
     As to the delay in producing mandatory discovery, the record does not show that it was the product of "intentional delay or bad faith" on the part of the Commonwealth.  Butler, 464 Mass. at 716.  It instead appears that production of the grand jury minutes was delayed because of a stenographer shortage, and the ballistics report was delayed due to personnel shortages in the crime lab.  As such, this delay is weighed lightly against the Commonwealth.  Cf. Dirico, 480 Mass. at 506-507 (delay due to outstanding forensic testing results weighs lightly against Commonwealth where no evidence of intentional delay or bad faith).  
     The lengthy period during which the defendant's motions remained unresolved should also be weighed lightly against the Commonwealth.  Several of those motions were pending for many months with no apparent explanation for the delay in deciding them except, perhaps, the fact that they were filed during the first COVID-19 continuance period.  Although we recognize the extraordinary disruption to court functioning caused by the pandemic, that explanation holds less force in the context of ruling on motions not requiring evidentiary hearings.  See Beckett, 373 Mass. at 332, quoting Dickey v. Florida, 398 U.S. 30, 38 (1970) ("Although '[c]rowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable,' the deficiencies of the system cannot be a defense to a claim of the denial of a prompt trial").  And it holds even less weight once the first COVID-19 continuance period ended.  We therefore lightly weigh against the Commonwealth the period during which the defendant's motions filed during the first COVID-19 continuance period remained unresolved.  See Butler, 464 Mass. at 716 ("although we do not focus merely on the conduct of the prosecution, we do accord greater weight to delay attributable to the prosecution than to other public actors").
     iii.  Assertion of speedy trial right.  The third Barker factor looks at whether and how the defendant asserted his speedy trial right in the trial court.  Barker, 407 U.S. at 528.  The Commonwealth argues that this factor does not weigh in favor of the defendant because he never invoked his constitutional rights to a speedy trial (as opposed to his rights under rule 36), and because he waited more than three years after arraignment before he moved to dismiss the charges on speedy trial grounds.  "While it is not necessary that 'a defendant must storm the courthouse and batter down the doors to preserve his right to a speedy trial,' we do require some affirmative action."  Wallace, 472 Mass. at 66, quoting Butler, 464 Mass. at 716.  
     Although it is true that the defendant did not specifically invoke his constitutional right to a speedy trial in his motions to dismiss, this is not a case where the defendant slept on his rights.  The defendant repeatedly objected to the Commonwealth's requests for continuances and ultimately filed a motion to dismiss and later a renewed motion to dismiss under rule 36.  Contrast Beckett, 373 Mass. at 333 ("defendant . . . failed to show a diligent, or even casual, attempt to obtain a speedy trial.  She did not object at any time to the numerous continuances which were granted").  The defendant's repeated objections to the tolling of rule 36, objections to further continuances, and filing of his motion to dismiss and renewed motion to dismiss constitute "more than . . . [a] soft assertion of [the defendant's] right to a speedy trial."  Butler, 464 Mass. at 716.  Contrast id. at 717 (defendant's acquiescence in delay weighed slightly against him). 
     That said, the defendant himself was responsible for periods of delay, including those caused by his changes of counsel and decision to proceed pro se, his late-in-the-game decision to explore new trial theories, and his request to continue at least two scheduled trial dates on which the Commonwealth was prepared to proceed.  His repeated objections to delay by the Commonwealth take on a different complexion when viewed in tandem with his own lack of readiness for trial.  We accordingly give light weight to the defendant for this factor.
     iv.  Prejudice.  Finally, we turn to the fourth Barker factor -- whether the defendant was prejudiced by the delay.  Barker, 407 U.S. at 532.  Prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect . . . :  (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  Of these, the most serious is the last . . ." (footnote omitted).  Id.  See Dirico, 480 Mass. at 508, quoting Barker, 407 U.S. at 532 ("The potential impairment of a defense from delay is the 'most serious' concern when evaluating whether the defendant was prejudiced . . .").  Examples of defense impairment include when "witnesses die or disappear during a delay" or when "defense witnesses are unable to recall accurately events of the distant past."  Barker, 407 U.S. at 532.
     The defendant does not contend that his defense was in any way affected by the delay in bringing him to trial.  Instead, he argues that the "harms from prolonged incarceration were amplified" by the COVID-19 pandemic and that he was unable to provide financial or physical support for his disabled family members while he was in pretrial detention.  The defendant also alleges that he lost educational and employment opportunities.  
     We acknowledge that the defendant was held for a significant period of time awaiting trial and that such a lengthy period of detention has myriad negative consequences for any individual.  We also recognize that detention during the COVID-19 pandemic came with particular burdens and risks.[21]  See Committee for Pub. Counsel Servs. v. Chief Justice of the Trial Court (No. 1), 484 Mass. 431, 438, S.C., 484 Mass. 1029 (2020).  But in the absence of "actual[] impair[ment of] the defendant's defence," Horne, 362 Mass. at 746, or negligence or bad faith on the part of the Commonwealth in failing to bring the defendant to trial, the adverse consequences of pretrial detention to the defendant's life are not sufficient on their own to justify dismissal of the charges on constitutional speedy trial grounds in this case.  See Dirico, 480 Mass. at 508 & n.13 (defendant being "forced" to move from his home and to another State and resign from his job, suffering severe panic attacks and heart catheterization, and receiving "angry and taunting" messages from friends and family insufficient to justify dismissal on constitutional speedy trial grounds).  
     e.  Summation.  We view do not view the Barker factors individually but instead evaluate them in their totality.  See Barker, 407 U.S. at 533 (none of four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial"; "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant").  Here, we consider that, despite the significant delay in bringing the defendant to trial, there was no demonstrated prejudice to the defendant's ability to defend himself at trial; there was neither negligence nor bad faith on the part of the Commonwealth in moving the case forward; the lion's share of the delay was caused by factors entirely outside the control of the Commonwealth; and some of the delay was due to the defendant himself.  In the circumstances, we hold that the defendant's constitutional right to a speedy trial has not been violated.
Judgments affirmed. 
footnotes

     [1] Specifically, the defendant was indicted as follows:  count one -- illegal possession of a firearm, third offense, G. L. c. 269, § 10 (a), (d); count two -- armed assault with intent to rob (Archibald Moe), G. L. c. 265, § 18 (b); counts three and four -‑ assault and battery by means of a dangerous weapon (Archibald Moe), G. L. c. 265, § 15A (b); count five -- assault by means of a dangerous weapon (Archibald Moe), G. L. c. 265, § 15B (b); count six -- attempt to commit assault and battery by means of discharge of a firearm (Archibald Moe), G. L. c. 265, § 15F; counts seven and eight -- armed carjacking (Joseph Grasso and Cynthia Grasso), G. L. c. 265, § 21A; count nine -- assault by means of a dangerous weapon (Joseph Grasso), G. L. c. 265, § 15B (b); counts ten and eleven -- armed carjacking (David Coyne and Diana Coyne), G. L. c. 265, § 21A; counts twelve and thirteen -- assault by means of a dangerous weapon (Cynthia Grasso and David Coyne), G. L. c. 265, § 15B (b); count fourteen -- malicious damage to a motor vehicle, G. L. c. 266, § 28 (a); counts fifteen and sixteen -- home invasion (Kenneth Madamba and Corrine Madamba), G. L. c. 265, § 18C; count seventeen -- assault with intent to rob (Kenneth Madamba), G. L. c. 265, § 20; count eighteen -- breaking and entering in the daytime with intent to commit a felony, G. L. c. 266, § 18; count nineteen -- possession of burglarious tools, G. L. c. 266, § 49; count twenty -- unlawful possession of a class B controlled substance (methamphetamine), G. L. c. 94C, § 34; and count twenty-one -- assault by means of a dangerous weapon (Diana Coyne), G. L. c. 265, § 15B (b).  All but count twenty carried a habitual criminal sentence enhancement.
     [2] The defendant was initially held pretrial on $100,000 cash bail.    
     [3] The first order, dated March 13, 2020, continued all jury trials scheduled to commence in Massachusetts State courts between the date of the order and April 17, 2020, until April 21, 2020.  Supreme Judicial Court, Order Regarding Empanelment of Juries, No. OE-144 (Mar. 13, 2020).  A March 17, 2020 order continued all criminal bench trials as well.  Supreme Judicial Court, Order Limiting In-Person Appearances in State Courthouses to Emergency Matters That Cannot Be Resolved Through a Videoconference or Telephonic Hearing, No. OE-144, at 2 (Mar. 17, 2020).  After periodic review and extension, the continuances ultimately ran until October 1, 2021.  See Supreme Judicial Court, Seventh Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic, No. OE-144 (July 1, 2021).
     [4] In the February 8, 2022 decision denying the defendant's motion for reconsideration, the second judge found that the Commonwealth had not filed the status report required by the December 16, 2020 order, and the second judge ordered the Commonwealth to file that report by February 18, 2022.  In response, on February 11, 2022, the Commonwealth filed a status report on the ballistics discovery and reported that the certification of ballistics testing had been provided to standby counsel over a year earlier, on December 15, 2020, and that the Commonwealth had filed its certificate of compliance a year earlier, on February 16, 2021. 
     [5] These motions, all filed between November 30, 2020, and December 30, 2020, were a motion to correct the docket, a motion to dismiss the habitual offender enhancements, a motion to dismiss, a motion for discovery, a motion to suppress, and a motion for reconsideration of the amended first motion to dismiss for discovery violations.  
     [6] The defendant's motion to rescind his previous waiver of counsel was date stamped by the clerk's office on May 16, 2022, but the docket reflects that the motion was filed on May 17, 2022.  "Docket entries 'import incontrovertible verity' and 'stand as final' unless corrected by the court."  Commonwealth v. Denehy, 466 Mass. 723, 727 (2014), quoting Savage v. Welch, 246 Mass. 170, 176 (1923).  See Barry, 390 Mass. at 289 ("When a claim is raised under rule 36, the docket and minutes of the clerk are prima facie evidence of the facts recorded therein").  In any event, the one-day difference does not affect the outcome in this case. 
     [7] We note that the fifth judge's figure of 638 days for the two COVID-19 continuances was the result of subtracting the first day of the first COVID-19 continuance because it fell within the first excluded period.   Without that adjustment, the mathematical total of the two COVID-19 continuances is 639 days.
     [8] On November 22, 2022, the defendant filed a motion to reconsider the order denying his rule 36 motion, and that motion was denied on November 28, 2022.
     [9] The fifth judge's written decision contains a statement that "the defendant has not shown that more than four days includable in the speedy trial analysis passed."  The defendant does not argue that the judge incorrectly shifted the burden to him.  Nonetheless, we take this opportunity to reiterate that where, as here, a defendant has established a prima facie violation of rule 36 by demonstrating that more than 365 days have elapsed between arraignment and trial, "the burden is on the Commonwealth to demonstrate that a delay should be excluded under rule 36 (b) (2)."  Commonwealth v. Graham, 480 Mass. 516, 524 (2018).  That said, the judge's statement has no effect on the outcome of this appeal, which rests on our own examination of the record while keeping the burden on the Commonwealth.  See Denehy, 466 Mass. at 730.  
     [10] Relying on Mass. R. Crim. P. 13 (d) (2), as appearing in 442 Mass. 1516 (2004), the Commonwealth contends that the defendant's renewed rule 36 motion was untimely because it was not filed "before the assignment of a trial date . . . or within [twenty-one] days thereafter."  Mass. R. Crim. P. 13 (d) (2).   We are not persuaded.  Judges have "considerable discretion" to "permit a [pretrial] motion that has been heard and denied to be renewed."  Commonwealth v. Pagan, 73 Mass. App. Ct. 369, 374-375 (2008), quoting Commonwealth v. Gonsalves, 437 Mass. 1022, 1022 (2002), and Mass. R. Crim. P. 13 (a) (5).  Here, the fifth judge carefully considered the Commonwealth's argument and noted that, in cases where the rule 36 clock runs perilously close to running out before the commencement of trial (such as this one), the Commonwealth's reading of rule 13 (d) (2) would undermine a defendant's speedy trial protection under rule 36.  We agree.  
     [11] The defendant was found not guilty of attempt to commit assault and battery by discharge of a firearm, G. L. c. 265, § 15F (count six), and two counts of armed carjacking, G. L. c. 265, § 21A (counts seven and eight).  The Commonwealth entered a nolle prosequi as to the two home invasion charges, G. L. c. 265, § 18C (counts fifteen and sixteen), and the charge for possession of a class B substance, G. L. c. 94C, § 34 (count twenty), was dismissed.
     [12] Rule 36 also contains two transitional provisions allowing longer periods to trial during the first two years after the effective date of the rule.  Mass. R. Crim. P. 36 (b) (1) (A), (B).  Because rule 36 became effective on July 1, 1979, these transitional provisions no longer have any application.  
     [13] These excluded periods include, among others, "delay resulting from hearings on pretrial motions," "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement," "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness," and "[a]ny period of delay resulting from a continuance granted by a judge on his own motion or at the request of the defendant or his counsel or at the request of the prosecutor, if the judge granted the continuance on the basis of his findings that the ends of justice served by taking such action outweighed the best interests of the public and the defendant in a speedy trial."  Mass. R. Crim. P. 36 (b) (2) (A) (v), (vii), (B), (F).
     [14] In contrast, as explained infra, the constitutional right to a speedy trial under the Sixth Amendment and art. 11 is a fundamental right.  See Klopfer v. North Carolina, 386 U.S. 213, 223 (1967).
     [15] In his brief the defendant counts the two COVID-19 continuances as 638 days, rather than our count of 639.  See note 7, supra.
     [16] The record does not show when exactly the grand jury minutes were produced to the defendant; but, in any event, the Commonwealth does not challenge the defendant's assertion that they were not produced before the beginning of the first COVID-19 continuance period on March 13, 2020.  The Commonwealth acknowledges that the ballistics test results were not created or produced until after that date, see note 4, supra, due to staffing shortages at the crime lab.
     [17] The defendant's rule 36 motion to dismiss was filed on July 8, 2022, and not decided until November 1, 2022.  However, the parties agree that the period from July 8, 2022, to October 16, 2022, is properly excluded partly under rule 36 (b) (2) (A) (v) and (vii), and partly by an agreed-upon continuance.  Thus, there are only sixteen days in dispute.
     [18] Without much explanation, the defendant also argues that the period before November 16, 2022, should be included in the speedy trial calculation.  But this argument is defeated by the fact that the period is fully encompassed within the earlier continuance associated with the defendant's rule 36 motion to dismiss.
     [19] Relying on G. L. c. 276, § 35, the defendant argues in the alternative that a trial may not be adjourned for more than thirty days over the objection of a defendant who is in custody.   But G. L. c. 276, § 35, applies to adjournments of trials or examinations, not to pretrial continuances such as took place here.  See Commonwealth v. McGillivary, 78 Mass. App. Ct. 644, 654 n.18 (2011) (G. L. c. 276, § 35, "applies only to mid-trial continuances").
     [20] We acknowledge that our decision in Commonwealth v. Carr, 464 Mass. 855, 860 (2013), says that a preserved constitutional speedy trial claim is reviewed to "determine whether any error was harmless beyond a reasonable doubt."  This statement is not accurate.  Regardless of whether the issue was preserved or unpreserved, none of our other cases has employed such a standard for speedy trial claims, and Carr itself did not employ that standard but instead applied the four-factor test established in Barker v. Wingo, 407 U.S. 514, 530-531 (1972), as we have uniformly done in every one of our cases since Barker was decided.  See Dirico, 480 Mass. at 506; Commonwealth v. Wallace, 472 Mass. 56, 60 (2015); Butler, 464 Mass. at 714-715; Commonwealth v. Lanigan, 419 Mass. 15, 18 (1994); Commonwealth v. Tanner, 417 Mass. 1, 3 (1994); Commonwealth v. Dias, 405 Mass. 131, 139 (1989); Commonwealth v. Bodden, 391 Mass. 356, 359 (1984); Commonwealth v. Edgerly, 390 Mass. 103, 104 (1983); Commonwealth v. Rodriguez, 380 Mass. 643, 650 (1980); Look, 379 Mass. at 897-898; Commonwealth v. Beckett, 373 Mass. 329, 332 (1977); Commonwealth v. Dabrieo, 370 Mass. 728, 735 (1976); Commonwealth v. Daggett, 369 Mass. 790, 794 (1976); Commonwealth v. Boyd, 367 Mass. 169, 179 (1975); Gove, 366 Mass. at 361; Whitmarsh v. Commonwealth, 366 Mass. 212, 219 & n.6 (1974); Commonwealth v. Gilbert, 366 Mass. 18, 21 (1974); Commonwealth v. Horne, 362 Mass. 738, 741-742 (1973).  Barker adopted the four-factor test because the Court "except[ed] the right to speedy trial from the rule of waiver . . . applied to other fundamental rights" and rejected the demand-waiver rule in the context of the right to a speedy trial.  Barker, 407 U.S. at 526.  See Hanley, 337 Mass. at 388 (absence of speedy trial demand implies, but does not compel, finding of waiver).
     [21] When the pandemic created an added risk for those in pretrial custody, we attempted to alleviate some of the burden by way of the protocol enacted through Lougee, 485 Mass. at 80-82 (COVID-19 health hazards present material change in circumstances for bail reconsideration).  That the defendant did not have his bail reduced to an amount he could afford is based on factors unique to his case, including the severity of the charges.